**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION**

| | |
|---|---|
| GREGORY AHRENS, STEVE BARBER, VALERIE COTE, MARY ANN GEIGER, ROBERT HYLANDER, KENNETH JOHNSON, CHARLES W. MORRIS, MARK SINGLETON, AND TIMOTHY WALKER, individually and on behalf of a class of all others similarly situated,<br><br>            Plaintiffs,<br><br>v.<br><br>UCB HOLDINGS, INC., UCB, INC. DEFINED BENEFIT PENSION PLAN, ADMINISTRATIVE COMMITTEE OF THE UCB, INC. DEFINED BENEFIT PENSION PLAN, AND DOES 1-50,<br><br>            Defendants. | Case No.: _____<br><br>**COMPLAINT -- CLASS ACTION** |

Plaintiffs Gregory Ahrens, Steve Barber, Valerie Cote, Mary Ann Geiger,

Robert Hylander, Kenneth Johnson, Charles W. Morris, Mark Singleton, and

Timothy Walker, by and through their attorneys, hereby allege as follows:

## NATURE OF THE ACTION

1.     This action is brought pursuant to the Employee Retirement Income Security Act of 1974, as amended ("ERISA"), 29 U.S.C. § 1001, *et seq.*, by Plaintiffs on behalf of themselves and a class of participants in the UCB, Inc. Defined Benefit Pension Plan.

2.     Plaintiffs are former and current employees of UCB (or a subsidiary or affiliate) who are participants in the UCB Pension Plan and who were employees of Northampton Medical, Inc. ("Northampton") or Whitby Pharmaceuticals, Inc. ("Whitby") immediately before UCB's predecessor, UCB, Inc., acquired the companies in 1994. Russ Pharmaceuticals, Inc. ("Russ") is a company that was acquired by Ethyl Corporation in 1989; its name was then changed to Whitby.

3.     From at least 1994 until at least March 1, 2005 the terms of the UCB Pension Plan defined Credited Service to include participants' years of service at a subsidiary or affiliate within the United States even before the subsidiary or affiliate became a subsidiary of or affiliated with UCB (i.e., "Acquired Companies") for purposes of calculating participants' benefits under the Plan.  In March 2005, the UCB Pension Plan was amended to change the terms so that such pre-UCB service would no longer be included.  Both ERISA and the terms of the

Plan prohibited any such amendment from being applied retroactively to reduce accrued benefits, including those of Plaintiffs and the Class.

4.     After the 2005 Amendment, Plaintiffs received Pension Statements reflecting that their Credited Service under the UCB Pension Plan still included their pre-1994 service.  Their 2005 Pension Statements and other pension calculations confirmed that the March 2005 Amendment was not, at that time, being applied retroactively to affect or reduce their previously accrued benefits.

5.     By 2010 and 2011, the funding of the UCB Pension Plan decreased significantly from just a few years before. Absent some change to its financial fortunes, the UCB Pension Plan would no longer have been fully funded by 2012. Unless the liabilities of the Plan decreased, the plan sponsor, UCB, would be required to make additional contributions to the Plan.  In late 2011 and early 2012, UCB issued letters to certain participants in the UCB Pension Plan, including Plaintiffs, informing them that the Pension Statements received in 2005 and the other subsequent calculations had been improperly calculated.  From those participants who had already received payments, UCB sought to recoup the alleged overpayments and demanded that Plaintiffs and other participants repay the alleged overpayments plus interest at a rate of up to 8.25% per year.  No provision in the Plan or the SPD permitted UCB to seek such recoupment.  Nor did UCB provide

3

any of the participants with proper notification and disclosure of their rights, under

ERISA § 503, required when a plan fiduciary issues an adverse benefit decision.

6.      To justify its 2012 interpretation, UCB relied primarily on certain

provisions of 2005 and 2010 amendments to the Plan and refused to address the

terms of the Plan as they existed between 1994 and March 2005.  UCB dismissed

any consideration about the pension statements between 2005 and 2012 informing

Plaintiffs that their years of service at the Acquired Companies would be included

when calculating benefits.  UCB's reinterpretation of the Plan in 2012 was also

inconsistent with representations made by UCB officials to Plaintiffs and other

employees at Northampton and Whitby at the time of the acquisitions.  Nothing in

the Summary Plan Descriptions issued to employees supports UCB's 2012

interpretation or disclosed to Plaintiffs that their pre-acquisition years of service

would be excluded from Credited Service under the terms of the Plan.

7.      By 2012, the Plan was no longer in immediate danger of becoming

underfunded, primarily, if not exclusively, because the Plan's liabilities -- i.e., the

amount owed in benefits – had been reduced.

8.      This action seeks a determination that Plaintiffs and the Class are

entitled to have their benefits calculated under the terms of the Plan so that their

years of service at subsidiaries and affiliates of UCB prior to acquisition by UCB

4

are included and any retroactive application of an amendment is deemed an improper cutback. Alternatively, this action seeks a determination that the fiduciaries of the Plan breached their fiduciary duties with respect to the disclosures about the terms of the Plan and that the UCB Pension Plan should be reformed to be consistent with the terms as disclosed. Additionally, Plaintiffs request that UCB disgorge any profits earned on benefits wrongfully withheld from or belatedly distributed to members of the Class and, that UCB be enjoined from collecting any alleged overpayments of benefits that it is not entitled to obtain.

## JURISDICTION & VENUE

9.     **Subject Matter Jurisdiction.** This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 because this action arises under the laws of the United States.

10.     **Personal Jurisdiction.** This Court has personal jurisdiction over Defendants because Defendants transact business in and have significant contacts with this District, and because ERISA provides for nationwide service of process pursuant to ERISA § 502(e)(2), 29 U.S.C. § 1132(e)(2).

11.     **Venue.** Venue is proper in this District pursuant to ERISA § 502(e)(2), 29 U.S.C. § 1132(e)(2), because the employee benefit plan at issue is and was at the relevant times administered in this District, some or all of the events

5

or omissions giving rise to the claims occurred in this District, and one or more of

the Defendants may be found in this District.  Venue is also proper under 28

U.S.C. § 1391(b) and (c) because a substantial part of the events or omissions

giving rise to the claims occurred in this District, and one or more of the

Defendants reside in this District.

## PARTIES

### Plaintiffs

12.    Plaintiff Gregory Ahrens is a former employee of Defendant UCB.

On November 15, 1986, he began working for Russ, which Ethyl Corp. later

acquired and renamed Whitby. He became a participant in the UCB Pension Plan

immediately after UCB, Inc. acquired Whitby in September 1994. After over

twenty-four years of service, Ahrens's employment with Defendant UCB

terminated in February 2010.  At the time that Ahrens's service with UCB was

terminated in February 2010, he was a vested participant in the Plan.  In

approximately December 2012, he elected to take his retirement benefits under the

UCB Pension Plan in the form of a lump sum payment.  Plaintiff Ahrens is a

participant of the UCB Pension Plan within the meaning of ERISA §3(7) at least

because he has a colorable claim for benefits.  He currently resides in Piedmont,

Oklahoma.

13.     Plaintiff Steve Barber is a former employee of Defendant UCB. On March 1, 1990, he began working for Whitby. He became a participant of the UCB Pension Plan when UCB, Inc. acquired Whitby in September 1994. At the time Barber's service with UCB was terminated in April 2010, he was a vested participant in the Plan. He elected to take his retirement benefits under the UCB Pension Plan in the form of a lump-sum payment. Plaintiff Barber is a participant of the UCB Pension Plan within the meaning of ERISA §3(7) at least because he has a colorable claim for benefits. He currently resides in Flower Mound, Texas.

14.     Plaintiff Valerie Cote is a former employee of Defendant UCB. On October 1, 1989, she began working for Russ, which Ethyl Corp. later acquired and renamed Whitby. She became a participant of the UCB Pension Plan immediately after UCB, Inc. acquired Whitby in September 1994. After twenty-one years of service, Cote's employment with Defendant UCB was terminated in or about March 2010. At the time Cote's employment was terminated with UCB in March 2010, she was a vested participant in the Plan. In or about 2012, she elected to take her retirement benefits under the UCB Pension Plan in the form of a lump sum payment. Plaintiff Cote is a participant of the UCB Pension Plan within the meaning of ERISA §3(7) at least because she has a colorable claim for benefits. She currently resides in Chapin, South Carolina.

7

15.    Plaintiff Mary Ann Geiger is a former employee of Defendant UCB. On April 22, 1992, she began working for Northampton. She became a participant in the UCB Pension Plan when UCB, Inc. acquired Northampton in October 1994. After eighteen years of service, Geiger retired from UCB in February 2010. At the time Geiger terminated her service with UCB in February 2010, she was a vested participant in the Plan. Beginning in March 2010, Geiger began receiving a monthly payment of her retirement benefits in the form of a single-life annuity from The Plan. Plaintiff Geiger is a participant of the UCB Pension Plan within the meaning of ERISA §3(7) at least because she has a colorable claim for benefits. She currently resides in Dunwoody, Georgia.

16.    Plaintiff Robert Hylander is a former employee of Defendant UCB. On August 15, 1988, he began working for Russ, which Ethyl Corp. later acquired and renamed Whitby. He became a participant of the UCB Pension Plan when UCB, Inc. acquired Whitby in September 1994. After approximately eleven years of service, Hylander left Defendant UCB in April 1999 to pursue other opportunities. At the time that Hylander terminated his service with UCB in April 1999, he was a vested participant in the Plan. Despite making multiple requests to receive his retirement benefits under The Plan, he has not yet received his benefits. Plaintiff Hylander is a participant of the UCB Pension Plan within the meaning of

ERISA §3(7) at least because he has a colorable claim for benefits. He currently resides in San Antonio, Texas.

17.     Plaintiff Kenneth Johnson is a former employee of Defendant UCB. On November 15, 1986, he began working for Russ, which Ethyl Corp. later acquired and renamed Whitby. He became a participant of the UCB Pension Plan when UCB, Inc. acquired Whitby in September 1994. After twenty-two years of service, Johnson retired from Defendant UCB around October 2008. At the time that Johnson terminated his service with UCB in October 2008, he was a vested participant in the Plan. Around April 2011, he elected to take his retirement benefits under The Plan in the form of a lump-sum payment. Plaintiff Johnson is a participant of the UCB Pension Plan within the meaning of ERISA §3(7) at least because he has a colorable claim for benefits. He currently resides in McDonough, Georgia.

18.     Plaintiff Charles W. Morris is a former employee of Defendant UCB. On September 30, 1985, he began working for Russ, which Ethyl Corp. later acquired and renamed Whitby. He became a participant in Defendant Pension Plan when UCB, Inc. acquired Whitby in September 1999. After twenty-five years' service, Morris's employment with Defendant UCB was terminated around February 2010. At the time Morris's service with UCB was terminated in

9

February 2010, he was a vested participant in the Plan.  He has not yet elected to receive his retirement benefits under The Plan.  Plaintiff Morris is a participant of the UCB Pension Plan within the meaning of ERISA §3(7) at least because he has a colorable claim for benefits.  He currently resides in Macon, Georgia.

19.    Plaintiff Mark Singleton is a former employee of Defendant UCB.  On December 5, 1988, he began working for Russ, which Ethyl Corp. later acquired and renamed Whitby. He became a participant in Defendant Pension Plan in September 1994 when UCB, Inc. acquired Whitby. After approximately twenty-two years' service, Singleton's employment with Defendant UCB was terminated in or about February 2010. At the time that Singleton's service with UCB was terminated in February 2010, he was a vested participant in the Plan.  He has not yet elected to receive his retirement benefits under the UCB Pension Plan. Plaintiff Singleton is a participant of the UCB Pension Plan within the meaning of ERISA §3(7) at least because he has a colorable claim for benefits.  He currently resides in Johnston, Iowa.

20.    Plaintiff Timothy Walker is a former employee of Defendant UCB. On January 18, 1988, Walker started working for Russ, which Ethyl Corp. later acquired and renamed Whitby.  He became a participant in the UCB Pension Plan in September 1994 when UCB, Inc. acquired Whitby.  After twenty-two years of

service, Walker retired from UCB in February 2010. At the time that Walker's

service with UCB was terminated in February 2010, he was a vested participant in

the Plan. Around April 2011, he elected to take his retirement benefits under the

UCB Pension Plan in the form of a lump sum payment. Plaintiff Walker is a

participant of the UCB Pension Plan within the meaning of ERISA §3(7) at least

because he has a colorable claim for benefits. He currently resides in Peoria,

Arizona.

**Defendants**

21.    Defendant UCB, Inc. Defined Benefit Pension Plan ("the UCB

Pension Plan" or "The Plan"), effective on July 1, 1986, is and at all relevant times

has been an "employee pension benefit plan" within the meaning of ERISA §

3(2)(A), 29 U.S.C. § 1002(2)(A), and is a "defined benefit plan" within the

meaning of ERISA § 3(35), 29 U.S.C. § 1002(35). The UCB Pension Plan is

funded by UCB Holdings and is administered, at least in part, in Smyrna, Georgia.

22.    Defendant UCB Holdings, Inc. ("UCB Holdings") is a Delaware

corporation with its headquarters located in Smyrna, Georgia. UCB is the

successor to UCB, Inc. and is a wholly-owned subsidiary of UCB S.A., a non-

United States corporation with its registered offices located in Brussels, Belgium.

UCB Holdings is, and has been since about 2005, the plan sponsor, within the

meaning of ERISA § 3(16)(B), 29 U.S.C. § 1002(16)(B).  According to the 2006 SPD and the 2011 SPD, UCB Holdings, Inc. was and is the Plan Administrator, within the meaning of ERISA § 3(16)(A), 29 U.S.C. § 1002(16)(A), of the UCB Pension Plan.  UCB Holdings is, and has been since about 2005, a fiduciary of the UCB Pension Plan within the meaning of ERISA § 3(21), 29 U.S.C. § 1002(21).

23.    UCB, Inc. is a Delaware corporation with its headquarters located in Smyrna, Georgia.  UCB, Inc. was until about 2005 the plan sponsor, as defined in ERISA § 3(16)(B), 29 U.S.C. § 1002(16)(B).  According to the 2004 Form 5500, UCB, Inc. was the Plan Administrator, as defined in ERISA § 3(16)(A), 29 U.S.C. § 1002(16)(A), and a fiduciary of the UCB Pension Plan within the meaning of ERISA § 3(21), 29 U.S.C. § 1002(21). Upon information and belief, UCB, Inc. was a fiduciary of the Plan from 1994 until at least 2004.

24.    The Administrative Committee Defendants consists of those persons who served individually or as members of any committee that served as the Plan Administrator of the UCB, Inc. Defined Benefit Pension Plan whose identities are unknown to Plaintiffs.  Pursuant to Section 9.1 of the 1994 UCB Pension Plan Document and Section 10.1 of the 2006 and 2010 UCB Pension Plan Document, the Plan Administrator consists of an individual administrator or an administrative committee (referred to as the "Administrator") appointed by the Board of Directors

to control and manage the operation and administration of the Plan. Pursuant to Section 9.1 of the 1994 UCB Plan Document, the Administrator is a "named fiduciary" for the purposes of ERISA § 402. Pursuant to Sections 10.1 of the 2006 and 2010 UCB Pension Plan Document, the Administrator had the administrative power and authority over the operation and administration of the UCB Pension Plan. As a result of such powers and authority, the Administrative Committee and each of the Administrative Committee Defendants is a fiduciary of the Pension Plan within the meaning of ERISA § 3(21), 29 U.S.C. § 1002(21), because they have discretionary authority or discretionary responsibility in the administration of the Plan.

25.    UCB, Inc. and UCB Holdings are collectively referred to as UCB or the UCB Defendants.

**Relevant Non Parties**

26.    Russ Pharmaceuticals, Inc. ("Russ") was a pharmaceutical company located in Birmingham, Alabama. In 1989, Ethyl Corporation acquired Russ and changed the name to Whitby Pharmaceuticals ("Whitby"). In September 1994, UCB Inc. acquired Whitby pursuant to the September 15, 1994 Stock Purchase Agreement between Ethyl Corporation and UCB, Inc. for the shares of common stock of Whitby ("the Whitby Stock Purchase Agreement").

13

27.    Northampton Medical ("Northampton") is a pharmaceutical company that UCB Inc. acquired in October of 1994 pursuant to the September 6, 1994 Stock Purchase Agreement among Northampton Medical, Inc., Certain Stockholders of Northampton Medical, Inc. and UCB, Inc. ("the Northampton Stock Purchase Agreement").

## CLASS ACTION ALLEGATIONS

28.    Plaintiffs bring this action on behalf of themselves and as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure on behalf of members of a Class defined as follows:

(a)    All participants in the UCB Pension Plan who were employees of a subsidiary or affiliate of UBC, Inc. or a successor thereto (including UCB Holdings, Inc.) who had service with a subsidiary or affiliate of UCB prior to UCB's  acquisition of these companies (i.e., the Acquired Companies) prior to March 1, 2005 except for those employees of the Excluded Companies (defined below), and, after such acquisition, was a participant in the UCB Pension Plan; and

(b)    The beneficiaries of any such participants.

29.    Plaintiffs also bring certain claims on behalf of the following Subclass (the "Benefit Reduction Subclass" or "Subclass I"):

14

All participant members of the Class who received a letter from UCB

or Mercer from 2011 to the present informing them that their years of

service at one of the Acquired Companies would not be or would no

longer be included in their Credited Service and/or in their calculation

of benefits under the UCB Pension Plan (i.e., a Benefit Reduction

Letter) and the beneficiaries of such participants.

30.     Plaintiffs Geiger and Walker also bring certain claims on behalf of the

following Subclass (the "Payment Status Subclass" or "Subclass II")

All plan participant members of the Benefit Reduction Subclass who

received a Benefit Reduction Letter that sought recoupment of

amounts previously paid by the UCB Pension Plan and their

beneficiaries.

31.     Excluded from the definition of Acquired Companies are Medical

Industries, Inc., Interchem, Inc., CytoMed, Inc., Solutia, Inc., Air Products, Inc.,

Surface Specialties, Inc., Celltech U.S., Inc., and Radcure, Inc.

32.     Excluded from the Class and Subclasses are (a) the Administrative

Committee Defendants, (b) any fiduciaries of the Plan, (c) any officers or directors

of UCB, (d) any other persons who had decision-making or administrative

authority relating to the establishment, administration, modification, funding, or

interpretation of the UCB Pension Plan and (e) any member of the immediate family of any heirs, successors, assigns of any such excluded party.

**Numerosity**

33.     Members of the Class are so numerous that joinder of all members is impracticable.  According to UCB's Form 5500 for 2012, there were 2,698 participants in the UCB Pension Plan as of January 1, 2012.  At the time UCB acquired Northampton and Whitby, these two companies collectively employed several hundred employees.  Upon information and belief at least two to three hundred employees of Northampton and Whitby continued working after the acquisitions and became participants in the UCB Pension Plan.  Upon information and belief, the members of the Class are geographically dispersed across the United States.  Upon information and belief, most, if not all, of the participant class members have at least one beneficiary who is also a class member.

34.     Joinder of all members of each of the Sub-Classes is also impracticable.  As UCB has not disclosed to Plaintiffs the number of persons who received a Benefit Reduction Letter, the precise size of each of the Subclasses is presently unknown by Plaintiffs, but can be ascertained through discovery.  Based on information disclosed during the administrative process, the participants who received Benefit Reduction Letters were not in payment status at the time that the

Plan was frozen as of December 31, 2005. According to the Plan's Form 5500 for 2005, there were 1,477 active participants in the UCB Plan as of December 31, 2005. As UCB has not disclosed to Plaintiffs the number of persons from whom the Plan sought repayment in their Benefit Reduction Letter, the precise size of each of the Subclasses is presently unknown by Plaintiffs, but can be ascertained through discovery. For example, the Payment Status Subclass would have included those persons who had either received a lump sum payment or were receiving an annuity as of January 2012. According to the Plan's Form 5500 for 2011, there were at least 251 retired or separated participants actually receiving benefits and another 49 deceased participants who were receiving benefits as of December 31, 2005. Upon information and belief those numbers only include persons receiving annuities, not those who had received a lump sum of their entire benefit under the Plan. Upon information and belief, the members of the Subclasses are also geographically dispersed across the United States. Upon information and belief, most, if not all, of the participant members of the Subclasses also have at least one beneficiary.

**Commonality**

35.     The issues of liability are common to all members of the Class and are capable of common answers as those issues primarily concern (1) whether the

terms of the applicable Plan include years of service at the Acquired Companies when determining plaintiffs' years of service for benefit determination, (2) whether amendments to the Plan improperly reduced the years of service for Plaintiffs and the Class in violation of ERISA's anti-cutback provision; (3) whether the SPD failed to comply with ERISA and the DOL Regulations; (4) whether Defendant UCB and the Administrative Committee Defendants breached their fiduciary duties to the Class and/or the Subclass with respect to the Original 2005 Pension Statements, and subsequent communications between 2006-2011 regarding whether years of service at the Acquired Companies would be included when calculating their benefits; (5) whether the 2012 Benefit Reduction Letters violated ERISA's procedural requirements in failing to inform Plaintiffs that the letter resulted in an adverse benefit determination, which entitled Plaintiffs to appeal the new calculation of their benefits; (6) to the extent that the relevant terms of the Plan exclude years of service at the Acquired Companies, whether UCB failed to correct the fiduciary breaches made by the individuals who misrepresented that Plaintiffs' years of service at the Acquired Companies would be included in the benefits calculation.

36.     The issues regarding relief are also common to the members of the Class as the relief will consist primarily of a declaration that the Class is entitled to

receive benefits paid in accordance with the terms of the 1994 Plan. Other issues regarding relief common to the class are: (1) a declaration that the 2005 and 2010 amendments violated ERISA's anti-cutback provision; (2) that UCB breached its fiduciary duty to Plaintiffs by representing in the 2012 Benefit Reduction Letters that years of service at the Acquired Companies would not be included when calculating their benefits; and (3) a declaration that UCB failed to provide SPDs that were written in a manner calculated to be understood by the average plan participant that their years of employment at an Acquired Company was excluded when calculating their benefits under The Plan. Alternatively, should The Plan exclude years of service at the Acquired Companies, Plaintiffs seek a declaration that (1) UCB breached its fiduciary duty to Plaintiffs by representing that years of service at the Acquired companies would be included in their benefits calculations, which were made around the time of the 1994 Acquisitions; made in the Original 2005 Pension statements; and in subsequent communications between 2006 and 2011, and (2) UCB failed to correct these breaches, including by failing to bring suit to bring the fiduciary into compliance with the terms of The Plan.

37.     The issues of liability and relief also exist to all members of Subclass I and Subclass II.  The central question for Subclass I concerns whether Defendants breached their fiduciary duties to sub-class I by representing in the

Benefit Reduction Letters that Plaintiffs' years of service at Northampton and Whitby were not included in their years of service when calculating their benefits. The central questions for Subclass II concern whether Defendant UCB is entitled to recoupment or recovery of the alleged overpayments at issue, and whether Subclass II is entitled to a declaration that Defendant UCB is not entitled to recoupment or recovery of any alleged overpayments to members of Subclass II absent any affirmative showing that there are traceable funds that remain in their possession.

**Typicality**

38.    Plaintiffs' claims are typical of the claims of the other members of the Class because their claims arise from the same event, practice and/or course of conduct. Specifically, Plaintiffs, on behalf of themselves and the Class, challenge Defendants' interpretation of the Plan as not including years of service at the Acquired Companies when calculating participants' benefits as well as Plan amendments UCB has applied to retroactively reduce the benefits of Plaintiffs and the Class by reducing their years of Credited Service.  Similarly, the claims of fiduciary duty are based on substantially similar acts affecting all members of the Class or Subclass.

39.     Plaintiffs Ahrens, Barber, Cote, Geiger, Johnson, Morris, Singleton, and Walker have claims that are also typical of other Benefit Reduction Subclass members' claims because their claims arise from substantially similar and virtually identical written communications.

40.     Plaintiffs Geiger and Walker have claims typical of other Payment Status Subclass members' claims because their claims are based on similar written statements and a determination with respect to identical language – or the absence of certain language – in the terms of the Plan and a determination of their legal rights as a consequence.

**Adequacy**

41.     Plaintiffs do not have any interests antagonistic to or in conflict with those of the Class.  Plaintiffs Ahrens, Barber, Cote, Geiger, Johnson, Morris, Singleton, and Walker do not have any interest antagonistic to or in conflict with those of the Benefit Reduction Subclass.  Plaintiffs Geiger and Walker do not have any interests antagonistic to or in conflict with those of the Payment Status Subclasses.

42.     Defendants have no unique defenses against Plaintiffs that would interfere with Plaintiffs' representation of the Class or Subclasses.

43.    Plaintiffs are represented by counsel with extensive experience prosecuting class actions in general and with ERISA class action litigation experience and expertise.

**Fed. R. Civ. P 23(b)(1)(A)**

44.    The requirements of Fed. R. Civ. P 23(b)(1)(A) are satisfied as to the Class and the Subclasses.  The Administrative Committee, and the other fiduciaries of the UCB Pension Plan have a legal obligation to consistently interpret and apply the UCB Pension Plan's terms consistently for all similarly situated participants and to uniformly act in the best interests of the Plan and its participants consistent with the requirements imposed by ERISA.  As one of the issues in this case involve the interpretation of the terms of the Plan and the amendment of the Plan, conflicting interpretations of the same plan creates the risk of establishing incompatible standards of conduct for the Plan and its fiduciaries.  Similarly, conflicting determinations about whether fiduciaries of the Plan breached their fiduciary duties or other obligations under ERISA creates the risk of establishing incompatible standards of conduct for Defendants.

**Fed. R. Civ. P 23(b)(1)(B)**

45.    The requirements of Fed. R. Civ. P. 23(b)(1)(B) are satisfied as to the Class and the Plan.  The primary issues in this case involve questions concerning

the interpretation of the terms of the Plan and the fiduciary duties and other

obligations imposed by ERISA.  As a practical matter, the resolution of these

questions with respect to Plaintiffs would be dispositive of the interests of

participants who are in the Class even if they were not parties to the litigation, or

would substantially impair or impede their ability to protect their interests.

**Fed. R. Civ. P. 23(b)(2)**

46.     The requirements of Fed. R. Civ. P. 23(b)(2) are satisfied as to the

Class because Defendants have acted and/or failed to act on grounds generally

applicable to the Class, making declaratory, injunctive, and other equitable relief

appropriate with respect to the Class as a whole. As fiduciaries responsible for

interpreting the terms of the Plan, Defendants are required to interpret those terms

consistently for all similarly situated participants.  Likewise, the fiduciary duties of

loyalty, care and acting in accordance with the terms of the Plan require

Defendants to act uniformly with respect to similarly situated participants.  Finally,

to the extent the violations involve documents or other written communications,

the violations arise out of a single, uniform plan document or nearly identical form

written communications.

47.     The primary relief sought for the Class and the Benefit Reduction

Subclass consists of a declaration that the members of the Class and Subclass are

entitled to have their benefits calculated and determined under the Plan by

including their years of service at the Acquired Companies without the application

of a retroactive amendment and/or an order that reforms the Plan to include those

years of service when determining a participant's benefits consistent with the

written disclosures to participants. The primary relief sought by the Payment Status

Subclass consists of a declaration that Defendant UCB is not entitled to recoup any

purported overpayments absent tracing, injunctive relief barring further collection,

and the return of any wrongfully acquired monies.

**Fed. R. Civ. P 23(b)(3)**

48.     The requirements of Fed. R. Civ. P. 23(b)(3) are satisfied as to the

Class because (a) the questions of law and/or fact are not only common, but also

will predominate over any individual questions, including whether the relevant

terms of the UCB Pension Plan requires inclusion of years of service at the

Acquired Companies and whether Defendants breached their fiduciary duties and

other obligations under ERISA and (b) a class action is superior to other available

methods for the fair and efficient adjudication of this litigation.

49.     The following factors set forth in Rule 23(b)(3) favor certification of

this case as a class action:

(a)     The members of the Class have an interest in a unitary adjudication of the issues presented in this action for the reasons that this case should be certified under Rule 23(b)(1);

(b)     Upon information and belief, the only litigation concerning this controversy by any members of the Classes are ones filed in this Action.

(c)     This District is the most desirable location for concentrating the litigation because the following reasons: (i) the headquarters of UCB is located in this District, (ii) the UCB Plan is administered in this District, (iii) at least some of the Defendants can be found in this District, and (iv) the majority of the UCB company witnesses are located in this District.

(d)     There are no anticipated difficulties in managing this case as a class action.

## **FACTUAL ALLEGATIONS**

### **UCB's 1994 Acquisitions**

50.     In 1994, UCB, Inc. acquired two companies, Northampton and Whitby, around September and October 1994, respectively.

51.    Prior to UCB, Inc.'s respective acquisitions of Northampton and Whitby, representatives of UCB, Inc. made representations to employees of Northampton and Whitby that they would receive credit for their years of service with the acquired companies when calculating their retirement benefits under the UCB Pension Plan.

52.    Around the time UCB, Inc. acquired Northampton, UCB, Inc.'s then Head of Operations, Jean Bellin, stated during a company meeting held in Norcross, Georgia that employees' years of service with Northampton would be included in calculating employees' benefits under the UCB Pension Plan. Plaintiff Geiger and other Northampton employees attended this meeting. After the company meeting in Norcross, Thomas S. Stribling, then President of Northampton, reiterated Bellin's statement that employees' years of service with Northampton would be included when calculating their pension benefits under The Plan.

53.    Similarly, when UCB, Inc. acquired Whitby in 1994, Hannah Bright, then Human Resources Manager of UCB, stated at a national sales meeting held in Richmond, Virginia that employees' years of service with Russ and Whitby would be included when calculating employees' benefits under the UCB Pension Plan. Plaintiff Ahrens and other Whitby employees attended this meeting. At this same

meeting, Luc R. Vermeesch, UCB, Inc.'s then Treasurer and Director of Operations for Human Resources, confirmed Bright's statement by stating Whitby employees' years of service at both Whitby and Russ would be included in calculating their benefits under The Plan.

54.     When UCB, Inc. acquired Whitby, Hannah Bright and Tina Brewer, then Human Resources Manager of UCB, Inc., stated at a meeting held in Atlanta, Georgia that employees' years of service with Whitby would be included in calculating their benefits under the UCB Pension Plan. Plaintiff Barber and other Whitby employees attended this meeting. Both Bright and Brewer made the statement "We [UCB, Inc.] will honor your service credit." At the same meeting, UCB, Inc. representatives showed Whitby employees documents about how their years of credited service would be calculated under the UCB Pension Plan. These documents showed how years of credited service at prior companies – including Whitby and Russ – would be included in such calculations.

55.     Shortly before UCB, Inc. acquired Whitby, UCB, Inc. held a quarterly meeting. Approximately 300-350 Whitby employees, including regional trainers like Plaintiff Hylander, 30-35 district managers, and several regional managers attended this meeting. As a regional trainer, Plaintiff Hylander was responsible for ensuring new hires' employment paperwork was completely submitted before

entering the field. To ensure that he understood the effect of UCB's acquisition of Whitby on employees' benefits so that he could properly disseminate the information to new and existing employees, Plaintiff Hylander asked "Will we be given credit for our time at Russ and Whitby?" UCB, Inc. responded affirmatively stating that acquired employees' years of service at Russ and Whitby would be included in the calculation of their benefits under The Plan. Shortly after UCB, Inc. acquired Whitby, Hannah Bright told Plaintiff Hylander during a one-on-one meeting that his years of service at Russ and Whitby would be included in his benefit calculation under The Plan.

56.     Based on UCB, Inc.'s representations that their years of service at the acquired companies would be credited to them when calculating their retirement benefits under The Plan, Plaintiffs understood their years of service with the Acquired Companies would be included in the calculation of their retirement benefits.

**Relevant Provisions of the UCB Pension Plan and Subsequent Amendments**

57.     In 1994, when Northampton and Whitby were acquired by UCB, Inc. and Plaintiffs became participants in the UCB Pension Plan, the written instrument pursuant to which the UCB Pension Plan was established and maintained within

the meaning of ERISA § 402(a) was the UCB Defined Benefit Pension Plan as amended and restated effective January 1, 1994 ("the 1994 Plan Document")

58.     Section 1.12 of the 1994 Plan Document, defines "Credited Service" as "[a] Participant's Periods of Service, whether or not such Periods of Service were completed consecutively, expressed as whole years and fractions thereof." Section 1.12 of the 1994 Plan does not exclude service provided by Plaintiffs while they were employed with Northampton, Russ, and/or Whitby.

59.     Section 1.28 of the 1994 Plan Document defines "Period of Service" as "[a] period of service commencing on an Employee's Employment Commencement Date . . . and ending on the Employee's Severance from Service Date."  Section 1.28 of the 1994 Plan does not exclude service provided by Plaintiffs while they were employed with Northampton, Russ, and/or Whitby.

60.     Section 1.18 of the 1994 Plan Document defines "Employment Commencement Date" as "[t]he date on which an Employee is first credited with an Hour of Service for the performance of duties for the Employer."  Section 1.18 of the 1994 Plan Document does not exclude service provided by Plaintiffs while they were employed with Northampton, Russ, and/or Whitby.

61.    Section 1.16 of the 1994 Plan Document defines "Employee" in

relevant part as "any person who is receiving compensation for personal services

rendered in the employment of the Employer. "

62.    Section 1.17 of the 1994 Plan Document defines "Employer" as

(i) the Company, and (ii) any subsidiary or affiliated organization
which, with the approval of the Board of Directors and subject to such
conditions as the Board of Directors may impose, adopts this Plan,
and any successor or successors of any of them. Effective as of
November 30, 1993, all subsidiaries and affiliated organizations
within the United States shall be participating Employers in the Plan. .
. .

Section 1.17 of the 1994 Plan does not exclude "subsidiaries and affiliated

organizations within the United States" from the definition of "Employer" as set

forth in the 1994 Pension Plan. In fact, Section 1.17 in the 1994 Plan Document

explicitly provides: "Effective November 30, 1993, all subsidiaries and affiliated

organizations within the United States shall be participating Employers in the

Plan."

63.    Upon their respective acquisition by UCB, Inc., Northampton and

Whitby became "subsidiaries and/or affiliated organizations within the United

States" within the meaning of Section 1.17 of the 1994 Plan Document.

64.    At all relevant times the UCB Pension Plan provides that a

participant's accrued retirement benefit is by default expressed as a single-life

annuity payable at the normal retirement age of sixty-five and distributed as monthly payments.

65.     Section 4.1 of the UCB Pension Plan sets out the benefit accrual formula ("the Benefit Accrual Formula or the Formula"). The Formula calculates a participant's accrued benefit by (a) taking 1.33 percent of his or her average monthly compensation, determined by his or her five highest-paid consecutive calendar years during the last ten years of his or her employment, and (b) multiplying that percentage by the participant's years of Credited Service.  Should the participant's calculated average monthly compensation exceed the average of the participant's Social Security taxable wage base, the UCB Pension Plan provides an additional benefit, determined by multiplying a percentage of the difference between the two averages by the participant's years of Credited Service.

66.     As explained in the 2005 SPD in a section entitled "How Your Benefit is Determined," an employee's "pension benefit is determined by a formula that takes into account [an employee's] average monthly compensation and [the employee's] service with the company."  As a result, an increase in a participant's years of Credited Service increases the amount of his or her accrued benefit payable at age sixty-five, as calculated by the Formula (assuming other factors remain the same).  Similarly, discounting an employee's years of Credited Service

31

reduces the employee's accrued benefits under the plan (assuming other factors remain the same).

67.    On February 24, 2005, UCB, Inc. adopted "th[e] Eighth Amendment to the UCB, Inc. Defined Benefit Plan" ("the Eighth Amendment"), effective as March 1, 2005, "to amend the procedures under the Plan for a subsidiary or an affiliated organization of the Corporation to become a participating Employer in the Plan."

68.    The Eighth Amendment changed then-existing Section 1.17 in the 1994 Pension Plan, and replaces it, in part, with the following definition of "Employer" and the procedures for a subsidiary or an affiliated organization to become a participating Employer:

Employer

Means (i) the Company, (ii) any subsidiary or affiliated organization of the Company within the United States which was a participating Employer in the Plan prior to March 1, 2005, and (iii) any subsidiary or affiliated organization of the Company which, with the approval of the Board of Directors and subject to the conditions as the Board of Directors may impose, adopts this Plan in accordance with this Section, and any successor or successors of any of them.

Effective March 1, 2005, any subsidiary or an affiliated organization of the Company that is not a participating Employer in the Plan, if the subsidiary or affiliated organization is authorized to do so by the approval of the Board of Directors and subject to such conditions as the Board of Directors may impose, may adopt the Plan and become a participating Employer in the Plan by furnishing to the Administrator

a certified copy of a resolution of its board of directors adopting the
Plan. . . .

("the Revised Definition of 'Employer'").  Among other things, the Eighth

Amendment deleted the following language in the definition of "Employer" from

the 1994 Pension Plan: "Effective as of November 30, 1993, all subsidiaries and

affiliated organizations within the United States shall be participating Employers in

the Plan."  The Eighth Amendment also substituted and added the phrase "(ii) any

subsidiary or affiliated organization of the Company within the United States

which was a participating Employer in the Plan prior to March 1, 2005."

69.     The Revised Definition of Employer added by the Eighth Amendment

does not exclude Northampton, Russ, or Whitby as a "subsidiary or affiliated

organization of the [UCB] within the United States," or provide that any of those

entities were not "a participating Employer in the Plan prior to March 1, 2005."

70.     The  Eighth Amendment's revised  language for Section 1.17 of the

1994 Pension Plan is incorporated into Section 1.20, entitled "Employer," of the

UCB Pension Plan, as amended and restated effective January 1, 2006 ("the 2006

Pension Plan") and as amended and restated effective January 1, 2010 ("the 2010

Pension Plan").

71.     The Eighth Amendment also adds to the 1994 Pension Plan's Section

1.28, entitled "Period of Service," the following provision:

33

> Notwithstanding the provisions of this Section, employment with an
> entity (all or any portion of which is acquired by, merges with or
> becomes a subsidiary or an affiliated organization of the Company)
> for any period prior to the date of the acquisition, merger or affiliation
> will be taken into account under this Plan for purposes of determining
> a Participant's Period of Service only if, to the extent and for the
> purposes specified by resolution of the Board of Directors of the
> Company and in an appendix to the Plan.

("the Board Resolution Provision").  The added language is in Section 1.32,

entitled "Period of Service," of both the 2006 Pension Plan and the 2010 Pension

Plan.

72.     The UCB Pension Plan provides, in Section 10.1 of the 1994 Pension

Plan and in Section 11.1 of both the 2006 and the 2010 Pension Plan, that "[n]o

amendment of the Plan . . . shall be effective to the extent that it has the effect of

decreasing a Participant's accrued benefit." As a result of this provision, no

amendment of the Plan, including the Eighth Amendment, could decrease or

eliminate any participant's previously accrued benefits.  As a result, any benefits

based on service credit prior to 1994 that accrued prior to 1994 could not be

reduced or eliminated.

73.     Defendant UCB "froze" the UCB Pension Plan effective December

31, 2005.  Section 1.1 of both the 2006 and the 2010 Pension Plan provides, in

relevant part, that

> Notwithstanding anything to the contrary contained in the Plan, all
> benefit accruals under the Plan shall cease and a Participant's Accrued
> Retirement Income shall be determined on the basis of the
> Participant's Average Earnings, Average Social Security Wage Base
> and Credited Service as of December 31, 2005.

As a result, participants in the UCB Pension Plan did not accrue any further

retirement benefits under the Plan beginning January 1, 2006.

74.   From at least January 1, 2006 to January 1, 2010, the written

instrument of the Plan within the meaning of ERISA § 402 has been the UCB

Defined Benefit Plan (As Amended and Restated Effective as of January 1, 2006)

(the "2006 Plan Document").

75.   From at least January 1, 2010 to the present, the written instrument of

the Plan within the meaning of ERISA § 402 has been the UCB Defined Benefit

Plan (As Amended and Restated Effective as of January 1, 2010) (the "2010 Plan

Document").

76.   None of the Plan Documents for the UCB Pension Plan has a

provision that permits the Plan or its fiduciaries to recoup or recover any

purportedly overpaid benefits or to seek interest on any such overpayments.

**Communications After Adoption of the Eighth Amendment**

77.   After the Eighth Amendment was adopted and effective and after the

UCB Pension Plan was frozen, Plaintiffs received from UCB and/or Mercer

Human Resource Services ("Mercer") written communications concerning their accrued retirement benefits under the UCB Pension Plan. These written communications consisted of a personal pension statement and an individualized calculation of their estimated pension benefits under the UCB Pension Plan. Each of the Plaintiffs received a form document entitled "2005: Your Personal Pension Statement" ("Original 2005 Pension Statement"). Upon information and belief, each member of the Class also received his or her own Original 2005 Pension Statement.

78.     The Original 2005 Pension Statements provided to employees stated that Credited Service included their years of service at their respective Acquired Companies – i.e., Northampton, Whitby, and/or Russ – prior to their acquisition by UCB and that their service after UCB acquired those companies accrued until the UCB Pension Plan was frozen in 2006.

79.     According to the "Plan Administration" section of a Summary Plan Description ("SPD") of the UCB Pension Plan dated August 2006 and of a SPD dated 2011, Mercer is identified as an entity to which "[c]ertain Plan administration functions have been outsourced" by UCB. As such, since around 2005 or 2006, UCB, Inc. and/or UCB delegated "certain Plan administrative functions" to Mercer.

80.    After the effective date of the Eighth Amendment, Plaintiff Ahrens received from UCB and/or Mercer his Original 2005 Pension Statement. The Original 2005 Pension Statement issued to Ahrens provides that as of December 31, 2005, he had accrued "19.16 years of credited service," which includes his years of service at Russ, Whitby, and UCB.

81.    After the effective date of the Eighth Amendment, Plaintiff Barber received from UCB and/or Mercer his Original 2005 Pension Statement. The Original 2005 Pension Statement issued to Barber provides that as of December 31, 2005, he had accrued "15.83 years of credited service," which includes his years of service at Russ, Whitby, and UCB.

82.    After the effective date of the Eighth Amendment, Plaintiff Cote received from UCB and/or Mercer her Original 2005 Pension Statement. The Original 2005 Pension Statement issued to Cote provides that as of December 31, 2005, she had accrued "16.25 years of credited service," which includes her years of service at Russ, Whitby, and UCB.

83.    After the effective date of the Eighth Amendment, Plaintiff Geiger received from UCB and/or Mercer her Original 2005 Pension Statement. The Original 2005 Pension Statement issued to Geiger provides that as of December

31, 2005, she had accrued "13.75 years of credited service," which includes her years of service at Northampton.

84.     On November 28, 2006, Mercer sent Plaintiff Hylander a document titled "Estimate of Pension Benefits."  It provides that as of November 28, 2006, he accrued "10.68 years of credited service for benefit credit," which includes his years of service at Russ, Whitby, and UCB.

85.     After the effective date of the Eighth Amendment, Plaintiff Johnson received from UCB and/or Mercer his Original 2005 Pension Statement.  The Original 2005 Pension Statement issued to Johnson provides that as of December 31, 2005, he accrued "19.16 years of credited service," which includes his years of service at Russ, Whitby, and UCB.

86.     After the effective date of the Eighth Amendment, Plaintiff Morris received from UCB and/or Mercer his Original 2005 Pension Statement.  The Original 2005 Pension Statement issued to Morris provides that as of December 31, 2005, he accrued "20.33 years of credited service," which includes his years of service at Russ, Whitby, and UCB.

87.     After the effective date of the Eighth Amendment, Plaintiff Singleton received from UCB and/or Mercer his Original 2005 Pension Statement.  The Original 2005 Pension Statement issued to Singleton provides that as of December

31, 2005, he accrued "17.08 years of credited service," which includes his years of service at Russ, Whitby, and UCB.

88.     After the effective date of the Eighth Amendment, Plaintiff Walker received from UCB and/or Mercer his Original 2005 Pension Statement. The Original 2005 Pension Statement issued to Walker provides that as of December 31, 2005, he accrued "18.00 years of credited service," which includes his years of service at Russ, Whitby, and UCB.

**Summary Plan Description's Explanation of Credited Service**

89.     In the May 2005 SPD section entitled "How Your Benefit Is Determined," the SPD states:

> If you were previously employed by a company that was acquired by UCB, Inc., specific provisions developed for each acquired company govern the treatment of your prior employment with that company under this plan. Your local human resources manager can provide the necessary details that apply to you.

The May 2005 SPD does not set forth those "specific provisions" nor provide a description or summary of them.

90.     In both the August 2006 SPD and 2011 SPD sections entitled "How Your Benefit Is Determined," the SPDs state:

> If you were previously employed by a company that was acquired by UCB, Inc., specific provisions developed for each acquired company govern the treatment of your prior employment with that company under this plan.

MHRS [Mercer Human Resource Services] can provide the necessary details that apply to you.

Neither the August 2006 nor the 2011 SPDs set forth those "specific provisions" in full nor provide a description, nor summary, of those provisions. .

91.     Other than the general provisions that define "Employer," "Credited Service," and "Period of Service," the UCB Pension Plan does not contain "specific provisions developed" for Northampton, Russ, or Whitby – let alone any "specific provisions developed" that govern whether acquired employees' years of service at these acquired companies are included or excluded when calculating an employee's benefits under the Plan.  Similarly, there are no "specific provisions developed" for any subsidiaries of UCB other than Medical Industries, Inc., Interchem, Inc., CytoMed, Inc., Solutia, Inc., Air Products, Inc., Surface Specialties, Inc., Celltech U.S., Inc., and Radcure, Inc. that govern whether acquired employees' years of service at acquired companies are included or excluded when calculating an employee's benefits under the Plan.

92.     None of the governing instruments of the UCB Pension Plan have any "specific provisions developed" for Northampton, Russ, or Whitby, as referred to in the SPDs.

93.     No SPD dated after the date the Board adopted the Eighth Amendment (February 24, 2005), provides any information on what effect the

Revised Definition of "Employer" or the Board Resolution Provision has on the

calculation of retirement benefits under the UCB Pension Plan.

**Pension Statements Between 2006 And 2011**

94.    Between 2006 and 2011, Plaintiffs received statements and

calculations of their pension benefits stating that their years of service with

Northampton, Russ, and Whitby prior to those companies acquisition by UCB was

included in their Credited Service for purpose of the calculation of their retirement

benefits under the UCB Pension Plan.

95.    After he terminated employment with UCB in approximately

February 2010, Plaintiff Ahrens received a letter from Mercer dated June 8, 2010,

stating that his "terminated-vested benefit" in the UCB, Inc. Benefit Pension Plan

was a monthly annuity of $2,487.67. This figure was determined by using 19.16 as

his years of credited service, which was consistent with his Original 2005 Pension

Statement and included his years at Russ, Whitby, and UCB.

96.    After he terminated employed with UCB in approximately April 2010,

Plaintiff Barber received a Pension Options Form from Mercer, which stated he

had accrued 15.83 "Years of Service for Benefit Credit." The 15.83 years of

service included his years at Russ, Whitby, and UCB, which was consistent with

his Original 2005 Pension Statement.  Using the 15.83 years of service, his pension

benefit expressed in the form of a monthly annuity of $1,014.88 or a lump sum payment benefit of $231,926.40

97.    After she terminated employment with UCB in March 2010, Plaintiff Cote received a letter regarding her "Terminated-Vested Benefit" informing her that she had accrued 16.25 years of service for benefit credit under the UCB Pension Plan. The 16.25 years of Credited Service in the letter was consistent with her Original 2005 Pension Statement and included her years of service at Whitby prior to its acquisition by UCB.

98.    Upon her retirement in February 2010, Plaintiff Geiger received a "Benefit Notice and Election Package" dated June 22, 2010, in which she was informed that she had accrued 13.75 years of Credited Service under the UCB Pension Plan.  The 13.75 years of Credited Service was consistent with the representations made in her Original 2005 Pension Statement and included her years of service at Northampton prior to its acquisition by UCB.

99.    After leaving UCB in about April 1999, Mercer sent Plaintiff Hylander a letter dated November 28, 2006, stating he had accrued 10.68 "Years of Service for Benefit Credit." This number included his years at Russ, Whitby, and UCB.

100.   After he terminated employment with UCB in September 2008, Plaintiff Johnson received a letter from Mercer dated February 9, 2009, informing him that his "terminated-vested benefit" in the UCB Pension Plan was a monthly annuity of $4,379.46, which was calculated by using 19.16 years of Credited Service. The Credited Service and the annuity were consistent with the Original 2005 Pension Statement and included his years of service at Russ and Whitby prior to their acquisition by UCB.

101.   After he terminated employment with UCB in February 2010, Plaintiff Morris received a letter dated June 8, 2010, stating that at normal retirement age his Single Life Annuity under the UCB Pension Plan would be $2,893.11.  This amount was calculated by using 20.33 as his years of Credited Service, which was consistent with his Original 2005 Pension Statement and included his years at Russ and Whitby prior to their acquisition by UCB.

102.   After he terminated employment with UCB in February 2010, Plaintiff Singleton received a letter from UCB dated May 25, 2010, stating that his "terminated-vested benefit" in the UCB Pension Plan was a monthly annuity of $2,369.60, which was calculated by using 17.08 as his years of credited service. The Credited Service and the monthly annuity was consistent with his Original

2005 Pension Statement and included his years at Russ and Whitby prior to their acquisition by UCB.

103.  After his employment terminated in February 2010, Plaintiff Walker received a letter from Mercer dated May 25, 2010, stating that at normal retirement age his Single Life Annuity monthly benefit would be $2,508.65.  Seven months later, Plaintiff Walker received an "Estimate of Pension Benefits" from Mercer dated December 7, 2010, which confirmed $2,508.65 was the amount of his monthly annuity.  The December 7, 2010 letter stated his "Years of Service for Benefit Credit" were 18.00 and that his "years of vesting service" were 22.1667. In a January 14, 2011 document entitled "Pension Options Form," Mercer again confirmed that his "Years of Service for Benefit Credit" were 18.00, which equated a $2,508.65 monthly benefit from UCB Pension Plan. These repeated statements that he had 18.00 years of Credited Service were consistent with his Original 2005 Pension Statement and included his years at Russ and Whitby prior to their acquisition by UCB.

104.  Prior to October 2011, no one at UCB, Inc., UCB Holdings, nor anyone else on behalf of the UCB Pension Plan, including Mercer, ever indicated to or advised Plaintiffs that their years of service for the Acquired Companies prior to UCB's acquisition should not or would not be included in their Credited Service

44

or the formula used for calculating their benefits under the Plan. Prior to October 2011, no written communication advised Plaintiffs that their years of service at these Acquired Companies prior to UCB's acquisition should not or would not be included in their Credited Service or the formula used for calculating their benefits under the UCB Pension Plan.

105.   In planning their retirement and their retirement financing, Plaintiffs relied upon the representations and the calculation that their years of Credited Service would include their years of service at the Acquired Companies for benefit calculation under The Plan.

**The Funding of the UCB Pension Plan**

106.   According to the May 2005, August 2006, and 2011 SPDs, "UCB pays the full cost of the Plan."

107.   At the beginning of 2009, the UCB Pension Plan was either fully funded on both a Funding Target Attainment Percentage ("FTAP") basis and an Adjusted Funding Target Attainment Percentage ("AFTAP").

108.   An AFTAP basis allows credit for certain carryover and prefunding balances. For example, if a pension plan is overfunded by 10% in year 0, then that 10% can be carried over and "credited" to the fund in year 1 using an AFTAP calculation. Alternatively, under an AFTAP calculation, a pension plan could

spread the 10% credit out over multiple years: for example, being 10% overfunded in year 0 could then translate to a 5% credit year 1 and 5% credit in year 2. By contrast, calculating funding using a FTAP basis does not permit such credits; under FTAP, a pension plan will only be able to report the funding it has during any given year.

109.   In early 2010, the UCB Pension Plan was 103.44% funded on an AFTAP basis.  On an FTAP basis, however, which does not allow for credits, the UCB Pension Plan was only 84.08% funded.

110.   In early 2011, the UCB Pension Plan was 100.51% funded on an AFTAP basis, which included the allowed credits of carryover and prefunding balances. On an FTAP basis, however, the UCB Pension Plan's funding level had slipped to 81.03%.

111.   Once the AFTAP funding falls below 100%, the funding of the UCB Pension Plan could be improved only if the assets of the pension plan increase or the liabilities of the plan decrease.  As the plan sponsor, UCB – which pays the full cost of the UCB Pension Plan – can improve its pension plan's funding by increasing its assets through additional contributions by UCB or by reducing the plan's liabilities (i.e., liability for payment benefits).

112.   By early 2012, the UCB Pension Plan was funded at 97.82% on a FTAP basis and was funded at 121.65 % on an AFTAP basis. The increase in funding was primarily due to a significant drop in the reported liabilities: from $64,466,695 on January 1, 2011 to $56,639,370 on January 1, 2012.

**UCB Changes Its Interpretation of the UCB Pension Plan**

113.   On October 31, 2011, Mercer sent a letter to Plaintiff Barber stating that his single-life annuity at age sixty-five was only $2,104.41, a 28% reduction from the $2,939.99 reported in his Original 2005 Pension Statement. Similarly, the lump sum value of his single-life annuity payable at age sixty-five was reduced from $231,926.40 to $166,010.17.

114.   The October 31, 2011 letter did not include any information about any of the following: (i) any right to challenge this decision either through an internal appeal or in court; (ii) the plan provision(s) upon which the UCB Pension Plan was relying for this decision; (iii) any rationale for this decisions; or (iv) his right to obtain copies of all documents provided, considered, or reviewed by the fiduciary of the UCB Plan in making this decision.

**UCB Issues Letters About Its Changed Interpretation**

115.   By separate letters dated January 2012 ("the January 2012 Benefit Reduction Letters"), UCB and/or Mercer informed Plaintiffs Ahrens, Cote, Geiger,

Johnson, Morris, Singleton, and Walker that previous communications had overstated their years of Credited Service. Upon information and belief, the January 2012 Benefit Reduction Letters were form letters that were sent to other members of the Class.

116.    The January 2012 Benefit Reduction Letters claimed that terms of the acquisition of Whitby provided "service prior to the acquisition would not apply to the UCB pension benefit, except for vesting purposes." Each of the January 2012 Benefit Reduction Letters advised these Plaintiffs and other members of the Class that their Credited Service under the Plan would exclude service with Northampton or Whitby (including years at Russ). The January 2012 Benefit Reduction Letters also informed Plaintiffs that UCB had "updated" his or her single-life annuity payable at age sixty-five. In fact, the January 2012 Benefit Reduction Letters advised Plaintiffs that their benefit under the UCB Pension Plan was being reduced.

117.    The January 2012 Benefit Reduction Letters were accompanied by a revised "2005 Your Pension Statement" ("Revised 2005 Pension Statement"). The January 2012 Benefit Reduction Letters and Revised 2005 Pension Statements reflect UCB's reduction of Plaintiffs' years of Credited Service and a reduction of benefits.

118.   Similarly, Mercer sent a letter to Plaintiff Hylander dated October 24, 2013, (Hylander's Benefit Reduction Document) that reflected that his years of credited service was 4.67 years – despite being previously provided written statements, as recently as August 16, 2012, that he had 10.68 years of credited service.

119.   Hylander's Benefit Reduction Document did not include any information about any of the following: (i) any right to challenge this decision either through an internal appeal or in court; (ii) the plan provision(s) upon which the UCB Pension Plan was relying for this decision; (iii) any rationale for this decisions; or (iv) his right to obtain copies of all documents provided, considered, or reviewed by the fiduciary of the UCB Plan in making this decision.

**Effect of the Change on Plaintiffs' Years of Service and Benefits**

120.   Plaintiff Ahrens' years of Credited Service were reduced from 19.16 to 11.33.  The amount of his benefit under the UCB Pension Plan expressed in the form of an annuity payable at normal retirement age was reduced from $2,487.67 to $1,470.96.  As a result of this reduction, the amount that Plaintiff Ahrens received as a lump sum payment of $101,176.75 in December 2012 was substantially less than what he would have received had the original 19.16 years of Credited Service been used to calculate his benefits.

49

121.    Plaintiff Cote's years of Credited Service were reduced from 16.25 to 11.33. The amount of her benefit under the UCB Pension Plan expressed in the form of an annuity payable at normal retirement age was reduced from $2,076.76 to $1,448.41.

122.    Plaintiff Geiger's years of Credited Service were reduced from 13.75 to 11.25. The amount of her benefit under the UCB Pension Plan expressed in the form of an annuity payable at normal retirement age was reduced from $681.06 to $557.24.

123.    Plaintiff Hylander's years of Credited Service were reduced from 10.68 to 4.67.

124.    Plaintiff Johnson's years of Credited Service were reduced from 19.16 to 11.33. The amount of his benefit under the UCB Pension Plan expressed in the form of an annuity payable at normal retirement age was reduced from $4,379.46 to $2,589.58.As a result of this reduction, the amount Plaintiff Johnson received as a lump sum payment of $208,799 in December 2012 was more than a 50% reduction in benefits that he would have received had the original 19.16 years of Credited Service been used to calculate his benefits.

125.    Plaintiff Morris's years of Credited Service were reduced from 20.33 to 11.33. The amount of his benefit under the UCB Pension Plan expressed in the

form of an annuity payable at normal retirement age was reduced from $2,893.12 to $1,612.55.

126.   Plaintiff Singleton's years of Credited Service were reduced from 17.08 to 11.33.  The amount of his benefit under the UCB Pension Plan expressed in the form of an annuity payable at normal retirement age was reduced from $2,369.60 to $1,572.02.

127.   Plaintiff Walker's years of Credited Service were reduced from 18.00 to 11.33.  The amount of his benefit under the UCB Pension Plan expressed in the form of a lump sum at normal retirement age was and reduced from $197,899.37 to $124,603.28.  Plaintiff Walker had already received his lump sum payment of $197,899.37 in April 2011.

128.   None of the January 2012 Benefit Reduction Letters included any information on how to appeal UCB's decision to revise and reduce Plaintiffs' years of Credited Service and retirement.  The Benefit Reduction Letters did not inform any Plaintiff of: (i) his or her appeal rights and ability to challenge the determination in court; (ii) the plan provision(s) upon which the UCB Pension Plan was relying; (iii) its rationale, including specific citations to the plan provision(s); or (iv) his or her right to obtain copies of all documents provided, considered, or reviewed by the fiduciary of the UCB Pension Plan that made the determination to

exclude Plaintiffs' years spent working at an Acquired Company from their Years of Service that is used to determine their benefits under the UCB Pension Plan.

**UCB's Recoupment of Claimed Overpayments**

129.   In March 2010, Plaintiff Geiger began receiving from the UCB Pension Plan her monthly pension benefit payment in the amount of $681.06.  In a May 17, 2012 Overstatement Letter to Geiger, UCB claimed it overpaid her by $3,343.14. It required her to repay this amount stating that the "IRS require[d] the plan to seek this amount." UCB also sought interest on the alleged overpayments at "the Plan's interest rate of 8.25% per year."  UCB calculated the total overpayment amount as $3,671.94. Corresponding reductions were taken from her subsequent monthly annuity payments.

130.   In January 2011, Plaintiff Walker elected to take his pension benefit in the form of a lump sum payment at a value of $197,899.37.  He received the payment in about April 2011.  When UCB sent Plaintiff Walker a Benefit Reduction Letter, it claimed the UCB Pension Plan overpaid him by $73,296.09. UCB required him to repay this amount plus interest stating that the "IRS require[d] the plan to recoup such amount adjusted with interest." UCB stated the interest calculation was based on "IRS guidance."  UCB calculated the overpayment amount plus interest to be $75,906.75.

131.   UCB did not identify the IRS rule or guidance that purportedly required recoupment or recovery of an overpayment to a participant of the UCB Pension Plan. Nor did UCB specify the IRS guidance upon which the interest rate was determined and applied to the purported overpayments to Geiger or Walker. UCB did not identify any provision in the plan document that permits the UCB Pension Plan to recoup overpaid benefits. UCB did not provide any showing that the purported overpayments to Geiger or Walker were traceable.

132.   On May 25, 2012, Geiger sent UCB a check for $3,671.94, which repaid UCB for the claimed overpayment and interest. She paid this out of monies other than those she received from the UCB Pension Plan because the latter monies were already exhausted and spent by the time she received the Benefit Reduction Letter.  Beginning June 1, 2012, UCB decreased the monthly payment of her single-life annuity from the UCB Pension Plan from $681.06 to $557.24.

133.   On January 16, 2012, Walker sent UCB a check for $73,296.09 as reimbursement for the claimed overpayment but did not include the requested interest.

134.   Plaintiff Geiger and Plaintiff Walker only reimbursed UCB for the purported overpayments because UCB had made the following material misstatements and representations to them: (1) the IRS required The Plan to recoup

the overpayments, (2) inferring that the terms of UCB's acquisition of Whitby prevented acquired employees' years of employment at an Acquired Company from "apply[ing] to the UCB pension benefit, " and (3) UCB failing to inform Plaintiffs Geiger and Walker that there is no provision in The Plan that permits it to recoup overpaid benefits – and that without such a provision, The Plan cannot recoup any purportedly overpaid benefits. Had the letters informed Geiger and Walker of their rights pursuant to ERISA § 503 and the Department of Labor ("DOL") regulations promulgated thereunder that govern how to appeal a denial or reduction of benefits, Plaintiffs Geiger and Walker would not have reimbursed the UCB Pension Plan.

## Plaintiffs' Exhaustion of Administrative Remedies

### Plaintiffs' Claims for Benefits

135.   Each Plaintiff submitted to the Plan Administrator a claim for benefits pursuant to the terms of the UCB Pension Plain, requesting, among other things, a determination that the calculation of his or her accrued benefits include his or her years of service at an Acquired Company prior to the company's acquisition by UCB. The letters were submitted by the following Plaintiffs on the following dates: Ahrens, June 13, 2013; Barber, December 11, 2013; Cote, June 23, 2013;

Geiger, May 14, 2013; Hylander, July 29, 2013; Johnson, May 23, 2013; Morris,

September 12, 2011; Singleton, July 26, 2013; Walker, May 10, 2013.

136.   Plaintiffs Geiger and Walker also requested the Pension Plan return

their payments because no provision in the UCB Pension Plan permits its fiduciary

to recoup or recover any overpayment.

137.   By separate letters, Lynne Knapp, Senior Benefits Manager of UCB,

"[for] the Plan Administrator," informed Plaintiffs that the Plan Administrator had

denied their claims (the "Denial Letters").   In support of the Plan Administrator's

decision, the Denial Letters cited : (i) the Board Resolution Provision and the

Revised Definition of "Employer" adopted by the Eighth Amendment and (ii)

either the Northampton Stock Purchase Agreement or the Whitby Stock Purchase

Agreement.   Neither of these stock purchase agreements are written instruments of

the UCB Pension Plan within the meaning of ERISA § 402, 29 U.S.C. § 1102.

138.   The Plan Administrator's Denial Letters were issued by letters dated

as follows for each of the following Plaintiffs: Ahrens, November 14, 2013;

Barber, March 13, 2014; Cote, September 16, 2013; Geiger, July 15, 2013;

Hylander, October 25, 2013; Johnson, July 15, 2013; Morris, December 11, 2013;

Singleton, October 23, 2013; Walker, July 15, 2013.

139.   The Denial Letter for Geiger states, without identifying any specific provision, that the Northampton Stock Purchase Agreement "does not provide for the crediting of such service for purposes of determining benefits under the [UCB] Plan." No provision in the Northampton Stock Purchase Agreement supports this assertion. In fact, no provision in the Northampton Stock Purchase Agreement even mentions any defined benefit pension plan sponsored by UCB, Inc. or UCB Holdings.

140.   The Denial Letters for the other Plaintiffs claimed that the Whitby Stock Purchase Agreement prevented the Plan from including pre-acquisition years of service in their Credited Service. The only provision in the Whitby Stock Purchase Agreement that addresses service credit under the UCB Pension Plan is Section 6.01(b)(iii); however, Section 6.01(b)(iii) addresses service credit for purposes of vesting. Nothing in Section 6.01(b)(iii) precludes or prohibits UCB from including pre-acquisition years of service in calculating a participant's Credited Service or determining a participant's accrued benefit.

141.   Within the time required by ERISA § 503, 29 U.S.C. § 1133, and the appeal provisions set forth in the UCB Pension Plan, each Plaintiff submitted to the Administrative Committee an administrative appeal, challenging the denial of his or her claim for benefits. The letters were submitted by the following Plaintiffs on

the following dates: Ahrens, January 10, 2014; Barber, May 10, 2014; Cote,

November 4, 2013; Geiger, September 11, 2013; Hylander, February 24, 2014;

Johnson, September 13, 2013; Morris, January 31, 2014; Singleton, December 20,

2013; Walker, September 11, 2013.

142.   By separate letters, Lynne Knapp, Senior Benefits Manager of UCB,

informed Plaintiffs that "[t]he U.S. Benefits Committee . . . of UCB Holdings, Inc.

. . . on behalf of the Plan Administrator" denied their appeals (the "Appeal Denial

Letters"). The Appeal Denial Letters cited, among other things, (i) Section 1.32 of

the 2006 and 2010 Pension Plans and (ii) the Revised Definition of "Employer."

143.   The Appeal Denial Letters were issued to the following Plaintiffs on

the following dates: Ahrens, March 13, 2014; Barber, July 11, 2014; Geiger,

December 22, 2013; Hylander, April 28, 2014; Johnson, November 12, 2013;

Morris, April 25, 2014; Singleton, March 11, 2014; Walker, November 11, 2013.

144.   Prior to the filing of this action, each of the Plaintiffs exhausted their

administrative remedies.

**Defendant UCB Has a Conflict of Interest**

145.   UCB Holdings is, and has been at least since 2006, the Plan

Administrator of the UCB Pension Plan. UCB Holdings is, and at least since 2011

has also been the Plan Sponsor and pays the full cost of the Plan. As such, UCB is responsible both for making benefit determinations and for funding the Plan.

146.   A decision reducing the amount of benefits to be paid by the Plan has a correspondingly positive impact that forestalls or reduces the amount of additional contributions to be made by UCB.

147.   The decisions in the Denial Letters and the Appeal Denial Letters served the interests of UCB because by 2011 the Plan's funding had reduced to about only 81.03% on a FTAP basis, meaning the Plan could meet only 81.03% of its funding obligations, and only 100.51% on a AFTAP basis. On information and belief, without a reduction of its liability for benefit payments, the Plan's funding would have fallen below 100% on an AFTAP basis in 2012.  When a plan becomes less than 100% funded on an AFTAP basis, the plan sponsor, UCB, would then be required to make additional monetary contributions to cover the shortfall.

148.   As a result of its dual role in both interpreting the Plan and to fund the Plan's benefits, UCB had in 2012, 2013, and 2014 – and continues to have – a conflict of interest in interpreting the Plan, in particular with respect to making benefit determinations concerning the calculation and payment of benefits that would or may require UCB to pay additional contributions.

58

**COUNT I**
**Claim for Benefits**
**Pursuant to ERISA § 502(a)(1)(B), 29 U.S.C. § 1132(a)(1)(B)**
**(On Behalf of the Class Against the UCB Pension Plan)**

149.  Plaintiffs incorporate and re-allege by reference the foregoing paragraphs as if fully set forth herein.

150.  ERISA §§ 502(a)(1)(B), 29 U.S.C. §§ 1132(a)(1)(B), permits a plan participant to bring a civil action to recover benefits due to him or her under the terms of a plan, to enforce his or her rights under the plan, and/or to clarify his or her rights to future benefits under the plan.

151.  Pursuant to the terms of the UCB Pension Plan prior to the Eighth Amendment, including Sections 1.12 and 1.28 of the 1994 Pension Plan, which respectively define the terms "Credited Service" and "Period of Service," plan participants' pre-acquisition years of service with participating Employers must be counted toward those participants' aggregate years of Credited Service. In turn, these years must be counted in participants' calculation of their accrued benefits.

152.  Pursuant to the terms of the UCB Pension Plan prior to the effective date of the Eighth Amendment on March 1, 2005, Section 1.17 of the 1994 Pension Plan provided in relevant part that, "[e]ffective as of November 30, 1993, all subsidiaries and affiliated organizations within the United States shall be participating Employers in the Plan."

153.    The terms of the Plan as they existed prior to March 1, 2005, and with respect to Plaintiffs and the Class, the terms under which their pension benefits should be determined,  required inclusion of pre-acquisition service at an Acquired Company in determining Plaintiffs' and Class members' years of Credited Service and calculating their benefits under the UCB Pension Plan. As such, Plaintiffs and the Class were entitled to have the value of their benefits under the Plan, including their Credited Service in the Plan, determined using their pre-acquisition service at the Acquired Companies.

154.    Additionally and alternatively, the Eighth Amendment, including the Board Resolution Provision and the Revised Definition of "Employer," does not apply to and should not be applied to calculate the benefits of Plaintiffs and the Class as a result of Section 10.1 of the 1994 Pension Plan and Section 11.1 of the 2006 and the 2010 Pension Plan, all of which prohibit the application of amendments that retroactively reduce accrued benefits.

155.    As a result of Defendants' interpretation of the Plan, Plaintiffs and the Class have not received and will not receive the benefits to which they are eligible and entitled under the terms of Plan properly interpreted.

## COUNT II
### Violation of the Anti-Cutback Provision
### of ERISA §§ 204(g), 29 U.S.C. §§ 1054(g)
### (On Behalf of the Class Against UCB and the UCB Pension Plan)

156.  Plaintiffs incorporate and re-allege by reference the foregoing paragraphs as if fully set forth herein.

157.  ERISA § 204(g)(1), 29 U.S.C. § 1054(g)(1), provides that "[t]he accrued benefit of a participant under a plan may not be decreased by an amendment of the plan."

158.  Pursuant to 26 C.F.R. § 1.411(d)-3(a)(1), "a plan amendment includes any changes to the terms of the plan."

159.  ERISA § 3(23), 29 U.S.C. § 1002(23), defines "accrued benefits" in the case of a "defined benefit plan, the individual's accrued benefit determined under the plan and, except as provided in § 1054(c)(3) of this title, expressed in the form of an annual benefit commencing at normal retirement age."

160.  An accrued benefit includes not only the "net effect" of the dollars earned and/or paid under the Plan, but also the features and elements of the benefit formula itself.  As such, the accrued benefits protected from elimination by amendment under ERISA § 204(g) includes the conditions on which the benefits are to be accrued and paid under the Plan.

61

161.   Accrued benefits are considered "decreased" for purposes of ERISA §
204(g) not only when they are reduced in size or eliminated entirely, but also when
the plan imposes new conditions or materially greater restrictions on their receipt.

162.   Pursuant to the UCB Pension Plan's benefit accrual formula, an
increase in the years of Credited Service raises the amount of the annuity payable
at normal retirement age while a decrease in the years of Credited Service reduces
that amount.

163.   The right to have years of service count towards Credited Service
under the terms of the Plan is, or is part of, the accrued benefit under the UCB
Pension Plan within the meaning of ERISA § 3(23), 29 U.S.C. § 1002(23).

164.   By March 1, 2005, the effective date of the Eighth Amendment to the
UCB Pension Plan, Plaintiffs' and the Class's accrued benefits included their years
of service at the Acquired Companies prior to acquisition by UCB as part of their
Credited Service in calculating their pension benefit at normal retirement age under
the Plan.

165.   Based on the explanation in the Denial Letters and the Appeal Denial
Letters, UCB and the Plan applied the terms of the Plan after 2005, including the
Eighth Amendment, to impose additional conditions and/or materially greater
restrictions on the benefits of Plaintiffs and the Class.

166.    The change to the terms of the Plan with respect to the definition of what years would be included in Credited Service reduced the amount of benefits that Plaintiffs and the Class have received and/or will receive had the Eighth Amendment and other terms enacted after 2005 not modified the manner by which their benefits are calculated.

167.    By retroactively applying the Eighth Amendment and other amendments, UCB and the Plan violated, and continues to violate, the anti-cutback rule set forth in ERISA § 204(g)(1), 29 U.S.C. § 1054(g)(1).

168.    To the extent the interpretation of the Plan announced to Plaintiffs in 2011 and 2012 were *not* based on the Eighth Amendment, the revised interpretation is an amendment to the Plan, which violated, and continues to violate, the anti-cutback rule set forth in ERISA § 204(g)(1), 29 U.S.C. § 1054(g)(1) because it retroactively reduced the benefits payable at normal retirement age to Plaintiffs and the Class.

## COUNT III
### Violation of ERISA § 102(a), 29 U.S.C. § 1022(a)
### (On Behalf of the Class Against the UCB Defendants and the Administrative Committee Defendants)

169.    Plaintiffs incorporate and re-allege by reference the foregoing paragraphs as if fully set forth herein.

170.   ERISA § 102(a), 29 U.S.C. § 1022(a), requires that a "summary plan description of any employee benefit plan shall be furnished to participants and beneficiaries as provided in section 104(b)." ERISA § 102(a) also requires the SPD to include the information required by ERISA § 102(b), to "be written in a manner calculated to be understood by the average plan participant," and to "be sufficiently accurate and comprehensive to reasonably apprise such participants and beneficiaries of their rights and obligations under the plan."

171.   ERISA § 102(b) requires that the SPD contain, among other things, a description of "the plan's requirements respecting eligibility for participation or benefits; a description of the provisions providing for nonforfeitable benefits; [and] circumstances which may result in disqualification, ineligibility, denial or loss of benefits."

172.   The DOL Regulations interpreting ERISA § 102, 29 C.F.R. § 2520.102-2, reiterate that an SPD "shall be written in a manner calculated to be understood by the average participant, and shall be sufficiently accurate and comprehensive to reasonably apprise such participants and beneficiaries of their rights and obligations under the terms of the plan." 29 C.F.R. § 2520.102-2(b) also requires a SPD to describe or summarize "exceptions, limitations, reductions, or restrictions of plan benefits." 29 C.F.R. § 2520.102-2(a) specifies that an SPD

"will usually require . . . the use of clarifying examples and illustrations" to make the terms of the SPD understandable to the average participant.

173.   The DOL Regulations interpreting ERISA § 102, 29 C.F.R. § 2520.102-3(j), require the SPD to include a description of "[t]he plan's requirements respecting eligibility for participation and for benefits," and "also include a statement of the conditions pertaining to eligibility to receive benefits, and a description or summary of the benefits."

174.   None of the UCB Pension Plan's SPDs, including those dated May 2005, August 2006, and 2011, describe or summarize any exception, limitation, or restriction in the Plan that excludes years of service at an Acquired Company prior to its acquisition by UCB.  Instead each of the SPDs dated May 2005, August 2006, and 2011 only claims that "specific provisions developed for each acquired company govern the treatment of your prior employment with that company under this plan." But the SPD does not summarize or describe in a manner calculated to be understood by the average plan participant whether the UCB Pension Plan includes or excludes years of service at an Acquired Company.  Upon information and belief, no written communication was provided to any employee of Northampton, Russ, or Whitby who was a participant in the UCB Pension Plan informing them that their pre-acquisition service at these companies was excluded.

175. To the extent that the terms of the UCB Pension Plan prohibits inclusion of years of service at the Acquired Companies, the Plan Administrator Defendants violated ERISA § 102(a), 29 U.S.C. § 1022(a), and the DOL Regulations promulgated thereunder, by failing to create and provide Plaintiffs and the Class with SPDs that sufficiently describe or summarize such exception, limitation, or restriction in terms by which the average plan participant could have understood whether their prior service at the Acquired Companies was excluded from their Credited Service under the Plan.

176. To the extent that the UCB Pension Plan prohibits inclusion of years of service at the Acquired Companies, Plaintiffs and the Class were deprived of notice that their rights to Credited Service under the terms of the Plan were limited or restricted, and were harmed thereby.

## COUNT IV
### Breach of Fiduciary Duty Under ERISA § 404(a)(1)(A), (B) & (D), 29 U.S.C. § 1104(a)(1)(A), (B) & (D) In Connection with the Summary Plan Descriptions & Other Written Statements
### (On Behalf of the Class Against the UCB Defendants & the Administrative Committee Defendants)

177. Plaintiffs incorporate and re-allege by reference the foregoing paragraphs as if fully set forth herein.

178. ERISA § 404(a)(1), 29 U.S.C. § 1104(a)(1), requires, among other things, that a plan fiduciary discharge his or her duties with respect to a plan

"solely in the interest of the participants and beneficiaries" and (A) for the exclusive purpose of providing benefits to participants and their beneficiaries; (B) to act "with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims;" and (D) "in accordance with the documents and instruments governing the plan insofar as such documents are consistent with the provisions" of ERISA.

179.   The section entitled "How Your Benefit Is Determined" in the SPDs dated May 2005, August 2006, and 2011, respectively, states that, for employees of UCB who were previously employed by an Acquired Company, "specific provisions developed for each acquired company govern the treatment of your prior employment with that company under this plan." In the SPDs dated August 2006 and 2011, this section further provides Mercer "can provide the necessary details that apply to you."  In the SPD dated May 2005, this section further provides human resources at UCB "can provide the necessary details that apply to you."

180.   In none of the written instruments of the UCB Pension Plan from 1994 through at least 2011, does the UCB Pension Plan have any "specific provisions developed" for Whitby, Northampton, or any other Acquired Company

other than the Excluded Companies that govern the inclusion or exclusion of the years of Credited Service for those formerly employed with any of those acquired companies.

181.   In fact, all of the written communications to Plaintiffs, and upon information and belief to the Benefit Reduction Subclass, from UCB and Mercer included pre-acquisition years of service in the Credited Service and/or in the calculation of their benefits under the Plan, until at least 2011.

182.   By failing to develop any "specific provisions," by disseminating an SPD stating that such provisions had been developed and, by disseminating or failing to correct the dissemination of written communications stating or indicating that pre-acquisition years of service would be included in Credited Service, Defendants UCB and the Administrative Committee Defendants, breached their fiduciary duties of loyalty and care.

183.   By failing to create and disseminate a SPD that accurately reflected the terms of the Plan, and to the extent that Mercer and/or the Human Resources department of UCB did not provide accurate information about whether pre-acquisition years of service were included in Credited Service or the calculation of benefits under the Plan or to the extent that the SPD along with any written pension

statements from Mercer are considered one of the Plan documents, Defendants breached their duties to act in accordance with the plan documents.

184.   As a result of Defendants' breaches, Plaintiffs and other Subclass members have been harmed, including in connection with their retirement planning.

## COUNT V
### Breach of Fiduciary Duty Under ERISA §§ 404(a)(1)(A)&(B), 29 U.S.C. §§ 1104(a)(1)(A)&(B) In Connection with the 1994 Acquisitions (On Behalf of Plaintiffs Against UCB, Inc. & the Plan Administrator Defendants)

185.   Plaintiffs incorporate and re-allege by reference the foregoing paragraphs as if fully set forth herein.

186.   ERISA § 404(a)(1), 29 U.S.C. § 1104(a)(1), requires, among other things, that a plan fiduciary discharge his or her duties with respect to a plan "solely in the interest of the participants and beneficiaries" and (A) for the exclusive purpose of providing benefits to participants and their beneficiaries and (B) to act "with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims."

187.   Upon information and belief, at the time of UCB, Inc.'s acquisition of Northampton and Whitby, Defendant UBC, Inc. was a named fiduciary of and acted as a fiduciary of the UCB Pension Plan within the meaning of ERISA § 21(A), 29 U.S.C. § 1102(A).

188.   At meetings held with employees of Northampton and Whitby around the time of UCB, Inc.'s acquisition of these companies, representatives of Defendant UCB, Inc. and/or other fiduciaries of the UCB Pension Plan acted in a fiduciary capacity on behalf of Defendant UCB, Inc. and/or the Plan Administrator by answering questions and conveying information about the benefits of the UCB Plan including whether employees' years of service at the Acquired Companies would be included in the calculation of their benefits under the UCB Pension Plan.

189.   At meetings held with employees of Northampton and Whitby around the time of UCB, Inc.'s acquisition of these companies, the representatives of UCB, Inc. and/or the Plan Administrator made statements to the employees of Northampton and Whitby that were designed to convey and did convey that their years of service would be included in the Credited Service under the UCB Pension Plan.  Upon information and belief, these statements were made to encourage and induce the employees of Whitby and Northampton to remain as employees after the acquisition.  Each of the Plaintiffs remained employed for a substantial period

of time after the acquisition.  And members of the Class remained employed for at least some period of time after the acquisition.

190.   To the extent the terms of the 1994 Pension Plan does not include years of service at Whitby or Northampton when calculating Plaintiffs' and Class members' benefits, including Credited Service under the Plan, Defendant UCB and/or the Plan Administrator or other fiduciaries breached its fiduciary duty by knowingly misrepresenting material terms of the Plan or by knowingly omitting material information, namely that employees' years of service at the Acquired Companies would be included in the calculation of their retirement benefits under the Plan only if specifically provided under the terms of the Plan.

191.   To the extent the 1994 Pension Plan prohibits including Plaintiffs' years of service at an Acquired Company when calculating their benefits, Defendant UCB and/or the Plan Administrator or other fiduciaries breached their fiduciary duties in failing to correct those statements made at about the time of the 1994 acquisitions.  Instead of correcting the statements made at the time of the 1994 Acquisitions, those statements were reaffirmed by written pension statements that purported to confirm that their years of service at the Acquired Companies were included in the Credited Service under the UCB Pension Plan.  Not until 2011 or 2012 did Defendant UCB inform Plaintiffs or the Class members that their years

of service at the Acquired Companies were not included in the calculation of their retirement benefits under the UCB Pension Plan.

192.   By these acts and omissions, Defendants violated their fiduciary duties under ERISA § 404(a)(1)(A) and (B).  As a result of these initial breaches, and as their failure to correct these breaches, Plaintiffs and the Class were harmed, including because, in planning their retirement and their retirement financing, they relied on the amount of benefits that they would receive, which included as Credited Service, their years of service at the Acquired Companies.

## COUNT VI
**Breach of Fiduciary Duty Under ERISA §§ 404(a)(1)(A),(B) & (D), 29 U.S.C. §§ 1104(a)(1)(A),(B) & (D) In Connection with the Original 2005 Statements (On Behalf of the Benefit Reduction Subclass Against the UCB Defendants and the Administrative Committee Defendants)**

193.   Plaintiffs incorporate and re-allege by reference the foregoing paragraphs as if fully set forth herein.

194.   ERISA § 404(a)(1), 29 U.S.C. § 1104(a)(1), requires that a plan fiduciary discharge his or her duties with respect to a plan "solely in the interest of the participants and beneficiaries" and (A) for the exclusive purpose of providing benefits to participants and their beneficiaries; (B) to act "with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the

72

conduct of an enterprise of a like character and with like aims;" and (D) "in accordance with the documents and instruments governing the plan insofar as such documents are consistent with the provisions" of ERISA.

195.   According to the May 2005 SPD, the Plan Administrator of the UCB Pension Plan in 2005 was the UCB Financial Committee.  Pursuant to Section 9.1 of the 1994 Pension Plan, which, as amended, was the written instrument of the Plan within the meaning of ERISA § 402(a) in 2005, the Plan Administrator had the power to "control and manage the operation and administration of the Plan including the following duties, powers and responsibilities set forth in Section 9.3 of the Plan, to take all action and make all decisions necessary or proper to carry out the provisions of the Plan, to determine the amount of benefits which shall be payable to any person in accordance with the provisions of the Plan and to designate persons other than the Plan Administrator to carry out any duty or power which would otherwise be a fiduciary responsibility of the Plan Administrator under the terms of the Plan."  Pursuant to Section 9.5 of the 1994 Pension Plan, the Plan Administrator also had the power to employ consultant and clerical services as it may require in carrying out the provisions of the Plan or in complying with requirements imposed by ERISA and the Code.

196.   After the UCB Pension Plan was frozen, Defendant UCB and/or Mercer, the entity to which UCB delegated some of its fiduciary duties, sent Plaintiffs and the Class written communications in the form of the Original 2005 Pension Statements.  The Original 2005 Pension statements represented that Credited Service under the Plan included years of service at Acquired Companies prior to acquisition by UCB.

197.   Between approximately 2006 and 2011, Defendant UCB and/or the Administrative Committee Defendants directly or indirectly through Mercer, consistently informed Plaintiffs and the Class through certain written communications, including Estimates of Pension Benefits, Benefit Notices and Election Packages, "Terminated-Vested Benefit" letters, and Pension Options Forms, that Credited Service under the Plan included years of service at Acquired Companies prior to acquisition by UCB.

198.   To the extent the UCB Pension Plan does not include years of service at an Acquired Company in Credited Service and/or when calculating benefits, Defendants UCB and/or Administrative Committee Defendants breached their fiduciary duties of loyalty and care by making material misrepresentations in the Original 2005 Pension Statements and those other written communications regarding the inclusion of years of service at the Acquired Companies being

74

included in the calculation of their retirement benefits under the Plan.  Upon information and belief, Defendants either knew or should have known of these representations.

199.   To the extent the 1994 Pension Plan does not include years of service at an Acquired Company in Credited Service when calculating benefits, Defendants UCB and/or the Administrative Committee Defendants breached their fiduciary duty by failing to act in accordance with the documents and instruments governing the plan because they issued communications that were inconsistent with the terms of the Plan.

200.   Not until 2011 was any Plaintiff, and upon information and belief any other Class member, ever informed that years of service with the Acquired Companies prior to acquisition by UCB was excluded from Credited Service under the Plan or when calculating their retirement benefits under the Plan.

201.   As a result of these communications and Defendants' failure to correct these statements, Plaintiffs and the Class have been harmed, including by relying on these statements when planning their retirement.

## COUNT VII
### Violation of ERISA § 503, 29 U.S.C. §1133 & the Terms of the Plan in Violation of ERISA § 404(a)(1)(D) 29 U.S.C. § 1104(a)(1)(D) With Respect to the Plan's Adverse Benefit Decision
### (On Behalf of the Benefit Reduction Subclass Against UCB Holdings and the Administrative Committee Defendants in 2011 and 2012)

202.   Plaintiffs incorporate and re-allege by reference the foregoing paragraphs as if fully set forth herein.

203.   ERISA § 503, 29 U.S.C. § 1133, requires an employee benefit plan to "provide adequate notice in writing to any participant or beneficiary whose claim for benefits under the plan has been denied, setting forth the specific reasons for such denial, written in a manner calculated to be understood by the participant," and to "afford a reasonable opportunity to any participant whose claim for benefits has been denied for a full and fair review by the appropriate named fiduciary of the decision denying the claim." ERISA § 503 also requires that an employer benefit plan perform such functions, duties, and responsibilities "[i]n accordance with regulations of the Secretary."

204.   Pursuant to DOL Regulations promulgated under ERISA § 503 and codified in 29 C.F.R. § 2560.503-1(m)(4), "the term 'adverse benefit determination' means

> any of the following: a denial, reduction, or termination of, or a failure to provide or make payment (in whole or in part) for, a benefit, including any such denial, reduction, termination, or failure to provide

or make payment that is based on a determination of a participant's or beneficiary's eligibility to participate in a plan.

The term "adverse benefit determination" in the DOL Regulations applies to "any" reduction, retroactive or prospective, of a benefit.

205.    Pursuant to DOL Regulations promulgated under ERISA § 503 and codified in 29 C.F.R. § 2560.503-1(g)(1), the written notification of any "adverse benefit determination" must "set forth, in a manner calculated to be understood by the claimant" the following:

(i)     The specific reason or reasons for the adverse determination;

(ii)    Reference to the specific plan provisions on which the determination is based;

(iii)   A description of any additional material or information necessary for the claimant to perfect the claim and an explanation of why such material or information is necessary;

(iv)    A description of the plan's review procedures and the time limits applicable to such procedures, including a statement of the claimant's right to bring a civil action under section 502(a) of the Act following the adverse benefit determination on review . . . .

206.    ERISA § 404(a)(1), 29 U.S.C. § 1104(a)(1), requires that a plan fiduciary discharge his or her duties with respect to a plan "solely in the interest of the participants and beneficiaries" and (D) "in accordance with the documents and instruments governing the plan insofar as such documents are consistent with the provisions" of ERISA.

207.   According to the 2011 SPD, the Plan Administrator in 2011 and 2012 was UCB Holdings, Inc.  According to the 2010 Plan Document, which was the written instrument of the Plan in 2011 and 2012 within the meaning of ERISA § 402, 29 U.S.C. § 1102, the Plan Administrator was the Administrative Committee.

208.   The "Plan Claim Procedure" set forth in Section 10.8 of the 2010 Pension Plan requires that for any participant who is denied a claim for benefit shall be furnished written notice setting forth the following:

(1)     the specific reason or reasons for the denial;

(2)     specific reference to the pertinent Plan provisions of the Plan on which the denial is based;

(3)     a description of any additional material or information necessary for the claimant to perfect the claim and an explanation of why such material or information is necessary; and

(4)     an explanation of the Plan's claim review procedure, and the time limits applicable to such procedures, including a statement of the claimant's right to bring a civil action under Section 502(a) of ERISA following an adverse benefit determination on review.

209.   The January 2012 Benefit Reduction Letters provided to Plaintiffs Ahrens, Cote, Geiger, Johnson, Morris, Singleton, and Walker were form letters. Upon information and belief, there were three sets of these form letters: one issued to deferred vested participants, one issued to annuitants in payment status, and one issued to participants who had received lump sum payments.  Upon information

and belief, each member of the Benefit Reduction Subclass received such a letter or similar correspondence.

210.   Each of the January 2012 Benefit Reduction Letters was "a denial, reduction, or termination of, or a failure to provide or make payment (in whole or in part) for, a benefit," as each letter informed the recipient-participant of a decision to retroactively reduce his or her years of Credited Services, which equated to a reduction of his or her retirement benefits.  As such, each of the Benefit Reduction Letters constituted an adverse benefit determination within the meaning of 29 C.F.R. § 2560.503-1(m)(4).

211.   Similarly, the November 23, 2011 letter, and accompanying election of benefits that reflected a reduction in Plaintiff Barber's years of Credited Service (collectively "Barber's Benefit Reduction Documents"), was "a denial, reduction, or termination of, or a failure to provide or make payment (in whole or in part) for, a benefit," and thus constituted an adverse benefit determination within the meaning of 29 C.F.R. § 2560.503-1(m)(4). Specifically, Barber's Benefit Reduction Documents informed Plaintiff Barber of the decision to retroactively reduce his years of Credited Services, which equated to a reduction of his retirement benefits.

212.   Likewise, Hylander's Benefit Reduction Document reflected a reduction in Plaintiff Hylander's years of Credited Service such that it was "a denial, reduction, or termination of, or a failure to provide or make payment (in whole or in part) for, a benefit," and thus constituted an adverse benefit determination within the meaning of 29 C.F.R. § 2560.503-1(m)(4). The January 2012 Benefit Reduction Letters, Hylander's Benefit Reduction Document, and Barber's Benefit Reduction Documents were required to – but failed to – comply with 29 C.F.R. § 2560.503-1(g)(1) and the terms of the UCB Pension Plan. Specifically, the January 2012 Benefit Reduction Letters, Hylander's Benefit Reduction Document, and Barber's Benefit Reduction Documents failed to set forth, in a manner calculated to be understood by Plaintiffs Ahrens, Barber, Cote, Geiger, Hylander, Johnson, Morris, Singleton, Walker, or other members of the Class:

(a)     the specific reasons for the adverse decision;

(b)     the plan provisions that The Pension Plan was relying in rendering the adverse benefit determinations;

(c)     the Plan's review procedures, and his or her rights under such procedures and ERISA as well as his or her rights to challenge the determination on review in court, and

(d)      a description of any additional information necessary for him or her to

appeal the adverse benefit determination, including relevant provisions of

the Plan; and

(e)      their rights to obtain the documents relied upon, submitted,

considered, or generated in the course of making the adverse benefit

determinations.

213.   By failing to do so, UCB Holdings and/or the Administrative

Committee Defendants on the Committee in 2011 and 2012 violated ERISA § 503,

29 C.F.R. § 2560.503-1(g)(1) and the terms of the UCB Pension Plan.

## COUNT VIII
### Breach of Fiduciary Duty Under ERISA §§ 404(a)(1),
### 29 U.S.C. §§ 1104(a)(1) & Failure to Correct Fiduciary Breaches
### Under ERISA § 405, 29 U.S.C. § 1105(a)
### (On Behalf of the Class Against the Administrative Committee Defendants)

214.   Plaintiffs incorporate and re-allege by reference the foregoing

paragraphs as if fully set forth herein.

215.   ERISA § 404(a)(1), 29 U.S.C. § 1104(a)(1), requires a plan fiduciary

discharge his or her duties with respect to a plan "solely in the interest of the

participants and beneficiaries" and (A) for the exclusive purpose of providing

benefits to participants and their beneficiaries; (B) to act "with the care, skill,

prudence, and diligence under the circumstances then prevailing that a prudent

man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims."

216.   ERISA § 405(a)(3), 29 U.S.C. § 1105(a)(3) imposes a duty on a fiduciary who has reasonable knowledge of a breach of another fiduciary to make reasonable efforts to correct such a breach.  Among the reasonable efforts that a fiduciary may be required to make is to sue the breaching fiduciary, including filing suit against himself.

217.   Pursuant to Section 10.1 of the 2010 Plan Document, the Administrative Committee appointed by the Board of Directors is the a named fiduciary and the Plan Administrator of the Plan.

218.   Pursuant to Section 10.3 of the 2010 Plan Document, the Administrative Committee has "the power and the duty to take all action and to make all decisions necessary or proper to carry out the provisions of the Plan."

219.   Pursuant to Section 10.5 of the 2010 Plan Document, the Administrative Committee has the power to employ counsel "as it may require in carrying out the provisions of the Plan or in complying with the requirements of ERISA."

220.   Pursuant to the Trust Agreement dated July 5, 2006, between UCB, Inc. and the Trustee of the Plan, Investors Bank & Trust Company, the

Administrative Committee, as the Named Fiduciary and the Plan Administrator, had the power to direct the Trustee "to enforce by suit" or "to compromise, adjust and settle any and all claims … in favor" of the Trust.

221.   To the extent that the relevant terms of the UCB Pension Plan prohibit inclusion of years of service at the Acquired Companies prior to acquisition by UCB in Credited Service under the UCB Pension Plan, Defendants UCB Inc., UCB Holdings, and the Administrative Committee Defendants breached their fiduciary duty and caused losses to the Plan by causing the Plan to erroneously pay out benefits for many years that should not have been paid.

222.   Despite learning of and having actual knowledge within the meaning of ERISA § 413, 29 U.S.C. § 1113, of this purported error by no later than October 2011, the Administrative Committee Defendants failed to take sufficient action against any breaching fiduciary to restore losses to the Plan.  Upon information and belief, the Administrative Committee Defendants have not brought any lawsuit against the breaching fiduciaries to restore losses to the Plan.

223.   By failing to take appropriate corrective action, including by filing suit against any of the breaching fiduciaries, even if they include breaches by themselves, the Administrative Committee Defendants breached their fiduciary duties under ERISA § 404(a) and § 405.  By breaching their fiduciary duties, the

Administrative Committee Defendants caused losses to the Plan and, to the extent the Administrative Committee Defendants are responsible for the underlying breaches, also obtained a profit in the amount of the claim for which they were not required to restore losses.

224.   Pursuant to ERISA § 409, 29 U.S.C. § 1109, the Administrative Committee Defendants are liable to restore the losses and disgorge the profits as a result of these breaches.

**COUNT IX**
**Breach of Fiduciary Duty Under ERISA §§ 404(a)(1) 29 U.S.C. §§ 1104(a)(1)**
**As to Misrepresentations and Omissions Made in the**
**Benefit Reduction Letters**
**(On Behalf of the Benefit Reduction Subclass Against Defendant UCB)**

225.   Plaintiffs incorporate and re-allege by reference the foregoing paragraphs as if fully set forth herein.

226.   ERISA § 404(a)(1), 29 U.S.C. § 1104(a)(1), requires that a plan fiduciary discharge his or her duties with respect to a plan "solely in the interest of the participants and beneficiaries:" (A) for the exclusive purpose of providing benefits to participants and their beneficiaries and (B) to act "with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims."

227.   Among other responsibilities, ERISA § 404(a)(1) imposes on fiduciaries affirmative duties to make truthful representations to plan participants, to refrain from making false or misleading statements, to refrain from omitting material information, and as an affirmative duty to correct any false or misleading representations.

228.   In the Benefit Reduction Letters, Defendant UCB claimed that "[u]nder the terms of th[e] acquisition [of Northampton or Whitby], service prior to the acquisition would not apply to the UCB pension benefit." Contrary to this statement, none of the terms of the agreements prevent the UCB Pension Plan from recognizing pre-acquisition years of service as Credited Service under the Plan. Moreover, the letters failed to inform Plaintiffs and Class members that the merger agreement is not a Plan document, cannot override the terms of the written instrument under which the Plan is operated, and that fiduciaries cannot rely on non-Plan documents to reduce participants' benefits.

229.   Additionally, the January 2012 Benefit Reduction Letters and Barber's Benefit Reduction Documents suggest that the revised calculation was a mere "overstatement" or a miscalculation based on an initial "inappropriate" or mistaken reading of the Plan contrary to the longstanding history of the UCB Pension Plan. Yet, Defendant UCB failed to disclose that this "error" was made

not just to that particular participant but to many participants consistently and repeatedly over many years.  Likewise, the January 2012 Benefit Reduction Letters and Barber's Benefit Reduction Documents, omitted information that the interpretation of the terms of the Plan was based on the adoption and implementation of the Eighth Amendment effective March 1, 2005.

230.   In the January 2012 Benefit Reduction Letters issued to Plaintiffs Geiger and Walker, and the members of the Payment Status Subclass, Defendant UCB knowingly omitted material information about the UCB Pension Plan, including that the Plan did not have a provision that permitted it to recoup or recover any claimed overpaid benefits or to seek interest on any such overpayment.

231.   In the January 2012 Benefit Reduction Letters to Plaintiff Geiger, Plaintiff Walker, and other members of Payment Status Subclass, Defendant UCB knowingly made the misleading statement that the IRS required the UCB Pension Plan to recoup the alleged overpayments, even when the alleged overpaid benefits had been spent or were not traceable.

232.   In the January 2012 Benefit Reduction Letters, UCB failed to disclose that the ability of the Plan or any fiduciary of the Plan to recoup any such money was likely foreclosed as to any prior payments based on statute of limitations or laches.

233.   Plaintiffs Geiger and Walker and the other members of the Payment Status Subclass were harmed by these statements and omissions by making payments in the amounts that Defendant UCB claimed was an overpayment because UCB on behalf of itself or the Plan induced Plaintiffs Geiger and Walker, and other members of the Payment Status Subclass into making payments on allegedly overpaid amounts that UCB would likely have been unable to successfully collect through a court action.

### COUNT X
**Claim for Declaratory & Injunctive Relief Pursuant to
ERISA § 502(a)(3), 29  U.S.C. § 1132(a)(3) to Prevent
Recoupment Not Permitted by The Plan or ERISA
(On Behalf of the Payment Status Subclass Against the Plan, the UCB
Defendants and the Administrative Committee Defendants)**

234.   Plaintiffs incorporate and re-allege by reference the foregoing paragraphs as if fully set forth herein.

235.   28 U.S.C. § 2201 provides in relevant part that '[i]n a case of actual controversy within its jurisdiction . . . any court of the United States . . .  may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought.  Any such declaration shall have the force and effect of a final judgment or decree. . . ."

236.   ERISA § 502(a)(3), 29 U.S.C. § 1102(a)(3), authorizes a participant, beneficiary or fiduciary of the plan to bring a civil action (A) to enjoin any act or

practice which violates any provision of ERISA or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress violations of ERISA or the terms of the plan or (ii) to enforce any provisions of ERISA or the terms of the plan.

237.   ERISA § 502(a)(3) authorizes only equitable, but not legal relief and only by participants, beneficiaries, or fiduciaries.

238.   For a fiduciary to obtain recoupment on behalf of the Plan, the fiduciary must either be able to assert an action for an equitable lien or equitable restitution.

239.   Pursuant to 28 U.S.C. § 2201 and/or, ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3), Plaintiffs Geiger and Walker, on behalf of themselves and all members of Payment Status Subclass, are entitled to a declaration that (1) the UCB Pension Plan does not contain language sufficient to constitute an equitable lien by agreement, (2) the fiduciaries of UCB Pension Plan are not entitled to recoup or recover any purported overpayments without making a showing that the funds that UCB seeks are traceable to the overpaid funds, and (3) the fiduciaries of the UCB Pension Plan wrongfully obtained monies from participants.

## PRAYER FOR RELIEF

Wherefore, Plaintiffs pray that judgment be entered against Defendants on all claims, and request that the Court award the following relief:

A.     Declaring that Plaintiffs and the Class are entitled to have their benefits calculated and a determination of their benefits, under the UCB Pension Plan, that includes their years of service at an Acquired Company prior to UCB's acquisition of that company in their Credited Service;

B.     Enjoining Defendants from retroactively applying any plan amendments to Plaintiffs and the Class to prevent inclusion of their years of service at the Acquired Companies prior to UCB's acquisition in their Credited Service;

C.     Ordering that the terms of the UCB Pension Plan be reformed as necessary to provide that Class members' years of service at the Acquired Companies prior to UCB's acquisition be included in the calculation of their years of Credited Service and their benefits under the Plan;

D.     Ordering that Defendants re-calculate Class members' benefits under the Plan by including their years of service at the Acquired Companies prior to UCB's acquisition to be included in their Credited Service and pay benefits determined by such re-calculation, in the form of a single-life annuity, a lump sum,

or any other distribution option offered by the Plan and elected by the Class member;

      E.     Ordering that Defendants UCB and the UCB Pension Plan pay prejudgment interest or disgorge any profits they have earned on benefits wrongfully withheld from and/or belatedly distributed to Class members;

      F.     Preliminarily and permanently enjoining Defendant UCB from recouping or recovering, and from attempting to recoup or recover, from Class members any alleged overpayments that Defendant UCB claims should not have been paid because years of service at Northampton, Russ, and/or Whitby are not included for the purpose of benefit calculation under the UCB Pension Plan;

      G.     Declaring that UCB Holdings and the Administrative Committee Defendants in 2012 failed to comply with the procedural requirements of ERISA § 503, 29 U.S.C. § 1133, the DOL Regulations promulgated thereunder, and the terms of the Plan ordering that these requirements be complied with whenever the Plan Administrator of the UCB Pension Plan renders an adverse benefit determination that reduces or otherwise modifies a participant's benefits;

      H.     Declaring that Defendants UCB and Administrative Committee failed to comply with the requirements set forth in ERISA § 102(a), 29 U.S.C. § 1022(a), and the DOL Regulations promulgated thereunder, and ordering that these

requirements be complied with to describe or summarize exceptions, limitations, or restrictions of the UCB Pension Plan;

     I.     Declaring that each fiduciary determined to have breached his, her or its fiduciary duties violated their fiduciary duties in the manner described in this Complaint and that a surcharge be imposed on those fiduciaries;

     J.     Declaring that Defendants UCB, Administrative Committee, and/or Does 1-50 breached their fiduciary duty of loyalty to Class members by misrepresenting in the ongoing administration of the UCB Pension Plan material terms of The Plan concerning whether their years of service at Northampton, Russ, and/or Whitby are included for the purpose of benefit calculation;

     K.     Ordering Defendants be equitably estopped from denying Plaintiffs benefits that include their years of service at an Acquired Company as a result of repeatedly representing to Plaintiffs that their years of service at the Acquired Companies would be included in the calculation of their pension benefits;

     L.     Declaring that the Administrative Committee Defendants breached their fiduciary duties to the  Plan and the Class by failing to correct the breaches of the fiduciaries and caused losses to the UCB Pension Plan and ordering Defendants to restore those losses;

M.     Requiring UCB or the Plan, whichever received their improperly obtained payments under the guise of recoupment, be required to return those monies and be required to either (1) disgorge any profits earned on those monies or (2) pay prejudgment interest on such monies, whichever is greater;

N.     Ordering Defendants UCB, Administrative Committee, and/or Does 1-50 to make whole the Subclass II members that paid Defendant UCB for the purported overpayments by paying each of them an equitable surcharge in an amount equal to what he or she paid Defendant UCB upon receipt of a Benefit Reduction Letter;

O.     Declaring that Defendant UCB is not entitled to recoupment or recovery of any alleged overpayments to members of the Payment Status Subclass absent an affirmative showing that there are traceable funds that remain in their possession;

P.     Requiring the forfeiture of any interest in the Plan that any fiduciary alleged to have breached his fiduciary duty to the Plan to the extent necessary to make whole innocent participants of the Plan who are members of the Class;

Q.     Removing Defendants from their role as fiduciaries of the UCB Pension Plan, enjoining the fiduciaries from acting as fiduciaries to any member of

the Class and appointing an Independent Fiduciary to manage and administer the

UCB Pension Plan;

R.     Awarding pre-judgment and post-judgment interest;

S.     Requiring Defendants to pay attorney's fees and the costs of this

action pursuant to ERISA §502(g)(1), 29 U.S.C. § 1132(g)(1) and/or ordering the

payment of reasonable fees and expenses of this action to Plaintiffs' Counsel on

the basis of the common benefit and/or common fund doctrine (and/or other

applicable law) out of any money or benefit recovered for the Class and Subclasses

in this action;

T.     Awarding, declaring or otherwise providing Plaintiffs and the Class

and Subclasses all relief under ERISA §502(a), 29 U.S.C. § 1132(a), or any other

applicable law, that the Court deems proper.

Dated:  February _3_, 2015

Stephen Anderson
Anderson Dailey LLP
2002 Summit Boulevard, Suite 1250
Atlanta, GA 30319
Telephone:  (404) 442-1812
Facsimile:  (404) 442-1820
Email: anderson@andersondailey.com
Georgia Bar No. 018325

R. Joseph Barton
Kira Hettinger

Cohen Milstein Sellers & Toll PLLC
1100 New York Ave. NW
Suite 500, East Tower
Washington, DC 20005
Telephone:  (202) 408-4600
Facsimile:  (202) 408-4600
Email: jbarton@cohenmilstein.com
Email: khettinger@cohenmilstein.com

Joseph A. Creitz
Creitz & Serebin LLP
250 Montgomery, Suite 1400
San Francisco, CA 94104
Telephone:  (415) 466-3090
Facsimile:  (415) 513-4475
Email: joe@creitzserebin.com

*Attorneys for Plaintiffs*