**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION**

GREGORY AHRENS, *et al.*,

     Plaintiffs,

v.

UCB HOLDINGS, INC., *et al.*,

     Defendants.

Case No. 1:15-cv-00348-TWT

**MEMORANDUM IN SUPPORT OF PLAINTIFFS' UNOPPOSED MOTION
FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT**

# **TABLE OF CONTENTS**

I.   BACKGROUND........................................................................................ 1

A.  Factual Background ............................................................................. 1

B.  Procedural Background ....................................................................... 3

C.  Terms of the Settlement And Plan of Allocation.................................. 5

D.  Addendum to the Settlement Agreement ............................................. 8

II.   THE PROPOSED SETTLEMENT IS FAIR, REASONABLE, AND ADEQUATE, AND MERITS FINAL APPROVAL ........................................................... 9

A.  The *Bennett* Factors Support Final Approval of the Settlement .......................... 10

1.  Plaintiffs' Likelihood of Success Supports the Settlement ..................... 10

2.  The Settlement Is Within the Range of Possible Recoveries ................... 12

3.  The Complexity, Expense, And Duration of Further Litigation Support Final Approval of the Settlement .................................................................. 15

4.  There Is No Opposition to the Settlement ............................................. 17

5.  The Stage of the Proceedings at Which the Settlement was Achieved Weighs in Favor of Final Approval.................................................................... 17

B.  The Judgment of Class Counsel Should Be Afforded Great Weight.................. 19

C.  The Settlement Is Not a Product of Collusion Between the Parties.................... 20

III.  THE PLAN OF ALLOCATION IS FAIR AND RESSONABLE AND MERITS FINAL APPROVAL.............................................................................. 22

IV.  CONCLUSION.................................................................................... 25

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Allapattah Servs., Inc. v. Exxon Corp.,*
  454 F. Supp. 2d 1185 (S.D. Fla. 2006) ........................................................10

*Behrens v. Wometco Enters., Inc.,*
  118 F.R.D. 534 (S.D. Fla. 1988), *aff'd* 899 F.2d 21......................................14

*Bennett v. Behring Corp.,*
  737 F.2d 982 (11th Cir. 1984) ...........................................................*passim*

*Bonner v. City of Prichard,*
  661 F.2d 1206 (11th Cir. 1981) .................................................................9

*Borcea v. Carnival Corp.,*
  238 F.R.D. 664 (S.D. Fla. 2006) .............................................................23

*Boyd v. Coventry Health Care Inc.,*
  299 F.R.D. 451 (D. Md. 2014).................................................................13

*Carpenters Health & Welfare Fund v. Coca-Cola Co.,*
  587 F. Supp. 2d 1266 (N.D. Ga. 2008) ......................................................22

*Chesemore v. All. Holdings, Inc.,*
  09-CV-413-WMC, 2014 WL 8388670 (W.D. Wis. 2014) ...........................19

*In re Chicken Antitrust Litig. Am. Poultry,*
  669 F.2d 228 (5th Cir. 1982) ..................................................................22

*Columbus Drywall & Insulation, Inc. v. Masco Corp.,*
  1:04-CV-3066-JEC, 2012 WL 12906499 (N.D. Ga. Oct. 26, 2012) .....................15, 17

*Cottillion v. United Refining Co.,*
  781 F.3d 47 (3d Cir. 2015) .....................................................................11

*Cotton v. Hinton,*
  559 F.2d 1326 (5th Cir. 1977) ..........................................................9, 18, 19

*Cyr Reliance Standard Life Ins. Co.,*
  No. CV 06-01585DDPRCX, 2008 WL 7095148 (C.D. Cal. January 16,
  2008) ............................................................................................20

*In re Dom. Air Transp. Antitrust Litig.,*
  148 F.R.D. 297 (N.D. Ga. 1993) ....................................................................14, 22

*Elliott v. Am. Int'l Life Assur. Co. of New York,*
  394 F. Supp. 2d 1357 (N.D. Ga. 2005) ........................................................10

*Greco v. Ginn Dev. Corp.,*
  635 Fed. Appx. 628 (11th Cir. 2015) ..........................................................10

*Griffin v. Habitat for Humanity Int'l, Inc.,*
  157 F. Supp. 3d 1301 (N.D. Ga. 2015) .......................................................10

*Hillis v. Equifax Consumer Servs., Inc.,*
  104-CV-3400-TCB, 2007 WL 1953464 (N.D. Ga. June 12, 2007).............14

*Holmes v. Cont'l Can Co.,*
  706 F.2d 1144 (11th Cir. 1983) ..................................................................22

*In re the Home Depot, Inc., Customer Data Sec. Breach Litig.,*
  1:14-MD-02583-TWT, 2016 WL 6902351 (N.D. Ga. Aug. 23, 2016) ...............*passim*

*Ingram v. The Coca-Cola Co.,*
  200 F.R.D. 685 (N.D. Ga. 2001) ...............................................................*passim*

*Johnson v. Montgomery County Sheriff's Dep't,*
  604 F. Supp. 1346 (M.D. Ala. 1985) ..........................................................22

*Lipuma v. Am. Express Co.,*
  406 F. Supp. 2d 1298 (S.D. Fla. 2005) .............................................12, 13, 17

*McDaniel v. Chevron Corp.,*
  203 F.3d 1099 (9th Cir. 2000) ....................................................................11

*Mehling v. New York Life Ins. Co.,*
  248 F.R.D. 455 (E.D. Pa. 2008) ..................................................................13

*In re Motorsports Merch. Antitrust Litig.,*
  112 F. Supp. 2d 1329 (N.D. Ga. 2000) ................................................12, 16

*Moyle v. Liberty Mut. Ret. Ben. Plan,*
  823 F.3d 948 (9th Cir. 2016) ......................................................................11

*Nelson v. Mead Johnson & Johnson Co.,*
  484 Fed. Appx. 429 (11th Cir. 2012) ...................................................10, 20

iii

*Northcutt v. Gen. Motors Hourly- Rate Employees Pension Plan*,
    467 F.3d 1031 (7th Cir. 2006) ..................................................................11

*Severstal Wheeling, Inc., Ret. Comm. v. WPN Corp.*,
    119 F. Supp. 3d 240 (S.D.N.Y. 2015) ........................................................19

*Spinedex Physical Therapy USA, Inc. v. United Healthcare of Arizona, Inc.*,
    770 F.3d 1282 (9th Cir. 2014) ...................................................................20

*In re Sunbeam Secs. Litig.*,
    176 F. Supp. 2d 1323 (S.D. Fla. 2001) ......................................................22

*In re U.S. Oil and Gas Litig.*,
    967 F.2d 489 (11th Cir. 1992) .....................................................................9

*Warren v. City of Tampa*,
    693 F. Supp. 1051 (M.D. Fla. 1988), *aff'd*, 893 F.2d 347 (11th Cir.
    1989) ............................................................................................................19

*Williams v. Rohm & Haas Pension Plan*,
    658 F.3d 629 (7th Cir. 2011) .....................................................................13

*In re WorldCom, Inc. ERISA Litig.*,
    No. 02-civ- 4816 (DLC), 2004 WL 2338151 (S.D.N.Y. Oct. 18, 2004).....13

**Statutes**

29 U.S.C. § 1001, *et seq.* ...................................................................................1

ERISA § 102 ......................................................................................................2, 11

ERISA § 204(g)..............................................................................................2, 11, 12

ERISA § 404(a)(1) ...............................................................................................11

ERISA §404(a)(1)(A) .............................................................................................2

ERISA § 502(a)(1)(B) ......................................................................................2, 11

ERISA §404(a)(1)(D) ............................................................................................2

ERISA § 502(a)(3) ...........................................................................................2, 11

**Other Authorities**

Fed. R. Civ. P. 23(e).........................................................................................1, 9

Fed. R. Civ. P. 23(e)(2) ...........................................................................................9

Pursuant to Rule 23(e) of the Federal Rules of Civil Procedure and this Court's February 9, 2017 Order (ECF No. 66) and April 7, 2017 Order (ECF No. 71), Plaintiffs respectfully submit this Memorandum to support their Motion for Final Approval of the Class Action Settlement and the Plan of Allocation.[1] The Settlement and the Plan of Allocation are fair, adequate, and reasonable. All relevant factors weigh in favor of final approval of the Settlement. Further, the method of distributing the settlement proceeds as set forth in the Plan of Allocation is based on legitimate considerations and designed to avoid arbitrary distribution of the proceeds. Therefore, Plaintiffs' Motion should be granted.

## I.     BACKGROUND

### A.     Factual Background

Plaintiffs brought this action pursuant to the Employee Retirement Income Security Act of 1974, as amended ("ERISA"), 29 U.S.C. § 1001, *et seq.* on behalf of a class of participants in the UCB, Inc. Defined Benefit Pension Plan ("the UCB Plan" or "the Plan") who had at one time been employees of Northampton Medical, Inc., or Whitby Pharmaceuticals, Inc. or Whitby, Inc. immediately before UCB acquired the companies in 1994. The Complaint alleges that UCB consistently informed these employees that they would

---

[1] The term "Settlement Class" refers to the class of individuals on behalf of which the Court, pursuant to Rule 23(a) and Rule 23(b)(1) and (2) and for settlement purposes, certified all of the claims asserted in the Complaint. ECF No. 66 at 2.

receive pension service credit under the UCB Plan for their years of pre-acquisition service. ECF No. 1 ("Compl.") ¶¶ 50-55. As pension benefits are a product of the number of years a participant worked (described as credited service under the Plan), the longer a participant works the greater their pension benefit (assuming everything else is the same). *Id.* ¶ 65.

Beginning in 2011, UCB sent letters to Plaintiffs claiming that, under the terms of the UCB Plan, their pension benefits had been overstated and the years that Plaintiffs spent working for Northampton and Whitby should not have been included when calculating their pension benefits. *Id.* ¶¶ 113-119. The letters also enclosed "revised 2005 Pension Statements" that reflected UCB's reduction of Plaintiffs' years of service (to omit pre-acquisition service credit) and reduced their benefits. *Id.* ¶¶ 117-18, 120-127. After exhausting their administrative remedies by submitting written claims for benefits to request that their years of service at Northampton and Whitney be included in the calculation of their pension benefits, Plaintiffs brought this lawsuit. *Id.* ¶ 135-44.

The Complaint sets forth ten counts against Defendants pursuant to different legal theories alleging (1) denial of benefits under the terms of the UCB Plan in violation of ERISA § 502(a)(1)(B) (Count I), (2) violation of ERISA's anti- cutback provision § 204(g) (Count II), (3) violation of the disclosure requirements set forth in ERISA § 102 (Count III), (4) breaches of

2

various fiduciary duties under ERISA §404(a)(1)(A), (B), and (D) (Counts IV through IX), and (5) a claim for declaratory and injunctive relief under ERISA § 502(a)(3) to prevent recoupment (Count X). *Id.* ¶¶149-239. The Complaint sought the following relief: (1) a declaration that the Class is entitled to have their benefits calculated under the Plan with pre-acquisition service, (2) an injunction enjoining UCB from retroactively applying any plan amendments to the Class that prevents inclusion of their years of service at an acquired company, (3) an order reforming the terms of the Plan to ensure years of service at an acquired company is included in the calculation of their years of crediting service, (4) an order requiring UCB to re- calculate Class Members' benefits under the Plan by including their years of service at an acquired company and pay benefits according to this re-calculation, (5) an order requiring UCB to pay prejudgment interest or disgorge any profits they have earned on benefits wrongfully withheld, (6) an injunction preventing Defendants from recouping and attempting to recoup any purported overpayments that UCB claims should not have been paid, and (7) declaratory relief for Defendants' failure to follow certain provisions of ERISA. *Id.* at Prayer for Relief.

### B.    Procedural Background

Plaintiffs filed the Complaint on February 3, 2015. ECF No. 1. In response, Defendants filed a motion to dismiss Count IV through VIII,

primarily arguing that those counts were barred by statute of limitations. ECF No. 25. On January 6, 2016, the Court dismissed Counts IV through VIII. ECF No. 37. While the motion to dismiss was pending, the parties began exploring the possibility of a settlement. ECF No. 42 at 1. On February 2, 2016, the Court granted the parties' joint motion to stay all proceedings to allow the parties to identify a mediator and complete the mediation process. ECF No. 43. While the case was stayed, Plaintiffs' counsel sought informal discovery to determine both the size of the Class and the amount of potential relief. ECF No. 44 at 2; ECF No. 46 at 2; ECF No. 61-3 ("Creitz Decl. I") ¶ 11. In April and May 2016, Defendants provided Plaintiffs with data on members of the Class, including their years of pre-acquisition service. ECF No. 46 at 2; Creitz Decl. I ¶ 11. To analyze the data, Plaintiffs retained an actuary, who calculated on the basis of the provided data the benefit to which each member of the Class would have had been entitled if credited with their years of pre-acquisition service. ECF No. 46 at 2; Creitz Decl. I ¶ 11. Based on those calculations, Plaintiffs' actuary estimated that the aggregate total of potential monetary relief was $9.1 million before interest. *Id.*

On July 26, 2016, the parties participated in a mediation session before Retired Magistrate Judge Morton Denlow in Chicago. ECF No. 48 at 1; Creitz Decl. I ¶ 11. After 10 hours of mediation, the parties reached agreement on the essential terms of a settlement and executed a term sheet. ECF No. 48 at 1;

Creitz Decl. I ¶¶ 11-12. In the ensuing months, the parties negotiated the terms of a more detailed and formal settlement agreement. ECF Nos. 51 at 2; ECF No. 53 at 1; ECF No. 55 at 2; Creitz Decl. I ¶ 12. During that time, Plaintiffs engaged their actuary to generate a plan of allocation for the distribution of the settlement fund ("the Plan of Allocation"). *Id*. The parties exchanged drafts of the settlement agreement as well as the Plan of Allocation and the class notice, and reviewed calculations for over 200 Class Members identified through Defendants' data. ECF No. 51 at 2; ECF No. 53 at 1-2; Creitz Decl. I ¶ 12; ECF No. 68-4 ("Creitz Decl. II") ¶ 13. After months of negotiations, on January 17, 2017, the parties executed a formal settlement agreement. ECF No. 63 ("Agmt"). The Court certified the Settlement Class under Rule 23(b)(1) and (b)(2), appointed Plaintiffs Mary Ann Geiger, Robert "Michael" Hylander, and Timothy Walker as class representatives[2] and Plaintiffs' counsel as Class Counsel and granted preliminary approval of the settlement and plan of allocation. ECF No. 66.

### C.   Terms of the Settlement And Plan of Allocation

The terms of the Settlement Agreement and Plan of Allocation is described in detail in Plaintiffs' motion for preliminary approval. ECF No. 62-1 at 7-10, 22-24. The Settlement Agreement provides significant relief monetary

---

[2] Plaintiff and Class Representative Ken Johnson passed away on March 16, 2017. The parties agree that his estate would be entitled to his share of the settlement benefit.

and non-monetary relief. Agmt. § IV.A-E. Defendants have agreed to resolve the claims of Plaintiffs and the Class for $5.5 million (plus interest at an agreed-upon rate from July 26, 2016) ("the Settlement Amount"). *Id.* § IV.A-C. After payment of court-approved attorneys' fees and expenses, the remaining amount ("the Net Settlement Amount") will be allocated to Class Members pursuant to the Plan of Allocation proposed by Class Counsel. *Id.* & Ex. A.

Under the Plan of Allocation, the Net Settlement Amount will be distributed on a pro rata basis by categorizing Class Members as follows: Group 1 consists of class members who received a letter in 2011/2012 informing them that their pension benefits would not include credit for years worked at Northampton and Whitby (after previously being provided statements of benefits that were calculated with pre-acquisition service credit); Group 2 consists of class members who received a letter in 2011/2012 informing them that their pension benefits would not include credit for years worked at Northampton and Whitby, and who had previously received payment from the UCB Plan reflecting credit for such service and who did not return the payment to UCB or the UCB Plan; Group 3 consists of all other class members. *See* Plan of Allocation ¶ 2(a)-(c).[3] Class Members will be allocated a percentage of the Net Settlement Amount based on their Recognized Claim.

_____

[3] The Appendix to the Plan of Allocation lists the Class members by unique Participant code (which was provided to each Class member), the Groups in which they are placed, and the respective percentages of the Net Settlement Amount they are assigned. *See* Plan of Allocation App. A.

For Group 1 Class Members, their Recognized Claim will be based on the benefit they would have received if they received credit for 100% of the years they worked at Northampton or Whitby. *Id.* ¶ 3(a). Group 2 Class Members will not receive a monetary distribution, because they have already received and retained benefit payments reflecting the years they worked at Northampton and Whitby; however, the UCB Plan will be amended so that the Plan terms conform to the benefit payments these participants already received and retained. *Id.* ¶ 3(b). For Group 3 Class Members, their Recognized Claim will be calculated based on the benefit they would have received if they received credit for 50% of the years they worked at Northampton or Whitby and additional amount based on certain post-acquisition service with UCB. *Id.* ¶ 3(c).

As to the non-monetary consideration of the Settlements, Defendants agree to cease efforts to recoup any alleged overpayments from Class Members who have already received pension benefits that included their pre-acquisition service. Agmt. § IV.E. Defendants also agree to amend the Plan to recognize the amount of benefits that those in Group 2 have already received and retained, with the goal of providing tax protection with respect to those payments. *Id.* § IV.D; Plan of Allocation ¶ 3(b). Defendants will bear all costs to implement and administer the Settlement and the Plan of Allocation (other than those incurred by Plaintiffs or Class Counsel and costs of posting notice

7

on a website provided by Class Counsel). Agmt. III.D, IV.G, VII.C.

In exchange, the Settlement Class will release Defendants and certain other Releasees from all claims that were or could have been asserted arising out of the events alleged in the Complaint or the administrative claims brought by Plaintiffs. *Id*. ¶ XIII.A. The released claims are tied to the events arising out of those alleged in the Complaint or administrative claims brought by Plaintiffs. *Id*. The Complaint was based on the entitlement to pre-acquisition service credit, disclosures related to pre-acquisition service credit, the procedures related to recalculation of pension benefits related to pre-acquisition service credit, and the procedures related to the administrative process whereby Plaintiffs challenged the recalculation of their benefits related to pre-acquisition service credit and attempted or actual recoupment of monies previously paid by the UCB Plan related to pre-acquisition service credit. Compl. ¶¶ 140, 151-155, 174, 181-183, 191, 200, 228-233. Equally important is a provision requiring Defendants to release all claims against Plaintiffs and the Class that Defendants could have asserted arising out of the facts or claims asserted in the Compliant, including any recoupment claims. Agmt. ¶ XIII.B. In short, both sides are releasing claims relating to pre-acquisition service credit at Northampton or Whitby.

### D.    Addendum to the Settlement Agreement

After notice was provided to the Class, the parties agreed to categorize

Participant No. 101 (one of the Plaintiffs) as a member of Group 1 in the Plan of Allocation rather than Group 3. *See* Addendum to Class Action Settlement Agreement. Re-categorization of Participant No. 101 to Group 1 would increase his Percentage of the Net Settlement Amount from 0.544% to 0.918%, but would cause a slight decrease in the Percentages of other Class Members. *Id*. To avoid a decrease in the amount of other Class Members, Defendants have agreed to increase the Net Settlement Amount up to an amount sufficient to increase Participant No. 101's Percentage of the Net Settlement Amount to 0.918% without reducing the Net Settlement Amount allocable to other members of the Settlement Class. *Id*.

## II.   THE PROPOSED SETTLEMENT IS FAIR, REASONABLE, AND ADEQUATE, AND MERITS FINAL APPROVAL

"Public policy strongly favors the pretrial settlement of class action lawsuits." *In re U.S. Oil and Gas Litig.*, 967 F.2d 489, 493 (11th Cir. 1992). "Particularly in class action suits, there is an overriding public interest in favor of settlement." *Cotton v. Hinton*, 559 F.2d 1326, 1331 (5th Cir. 1977).[4] A court may approve a class action settlement pursuant to Rule 23(e) "only after a hearing and on finding that it is fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2). The Eleventh Circuit has identified the following factors that a court should

---

[4] The Eleventh Circuit has adopted as binding precedent all Fifth Circuit decisions issued prior to October 1, 1981. *See Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981).

9

consider in determining whether a settlement is fair, reasonable, and adequate:

> (1) the likelihood of success at trial; (2) the range of possible recovery; (3) the point on or below the range of possible recovery at which a settlement is fair, adequate and reasonable; (4) the complexity, expense and duration of litigation; (5) the substance and amount of opposition to the settlement; and (6) the stage of proceedings at which the settlement was achieved.

*Bennett v. Behring Corp.*, 737 F.2d 982, 986 (11th Cir. 1984). In making that determination, the court may rely on "the judgment of experienced counsel for the parties." *Nelson v. Mead Johnson & Johnson Co.*, 484 Fed. Appx. 429, 434 (11th Cir. 2012). In addition the court must find that the class action settlement "is not a product of collusion between the parties." *Bennett*, 737 F.2d at 986.

### A.    The *Bennett* Factors Support Final Approval of the Settlement

#### 1.    Plaintiffs' Likelihood of Success Supports the Settlement

Courts in this Circuit recognize the complexity of ERISA cases. *E.g., Griffin v. Habitat for Humanity Int'l, Inc.*, 157 F. Supp. 3d 1301, 1306 (N.D. Ga. 2015) ("[T]he law governing ERISA claims is complex and, at times, virtually incomprehensible to all but the most studied and skilled."); *Elliott v. Am. Int'l Life Assur. Co. of New York*, 394 F. Supp. 2d 1357, 1363 (N.D. Ga. 2005) ("Review of a claim administrator's interpretation of an ERISA plan entails the completion of a highly complex series of inquiries."). Further, "class actions involving various legal theories are, by their nature, very difficult." *Allapattah Servs., Inc. v. Exxon Corp.*, 454 F. Supp. 2d 1185, 1206 (S.D. Fla. 2006). Settlement is favored where "there [are] substantial hurdles that affect[] the class's

10

likelihood of succeeding on the merits of its claims." *Greco v. Ginn Dev. Corp.*, 635 Fed. Appx. 628, 632 (11th Cir. 2015) (affirming approval of class action settlement). In considering the risks involved in continued litigation, courts have also taken into account "the threshold issue of class certification." *Ingram v. The Coca-Cola Co.*, 200 F.R.D. 685, 689 (N.D. Ga. 2001); *In re the Home Depot, Inc., Customer Data Sec. Breach Litig.*, 1:14-MD-02583-TWT, 2016 WL 6902351, at *5 (N.D. Ga. Aug. 23, 2016) (recognizing "challenges of obtaining and maintaining class certification through trial" even if some of plaintiffs' claims survived motion to dismiss).

After the Court's ruling on the motion to dismiss, Plaintiffs had five viable claims under ERISA § 502(a)(1)(B) (Count I), ERISA § 204(g) (Count II), ERISA § 102 (Count III), ERISA § 404(a)(1) (Counts IX), and ERISA § 502(a)(3) (Count X), respectively. Compl. ¶¶149-239. While Plaintiffs believe that their remaining claims are strong, they recognize that those claims are subject to potential defenses and arguments. For example, ERISA cases involving benefits claims and claims for equitable relief and injunctive relief to prevent recoupment are extremely difficult. *See, e.g., Moyle v. Liberty Mut. Ret. Ben. Plan*, 823 F.3d 948, 952 (9th Cir. 2016) (affirming dismissal of benefits claims for past service credit and claim for failure to disclose relevant information in SPD); *Northcutt v. Gen. Motors Hourly- Rate Employees Pension Plan*, 467 F.3d 1031, 1032 (7th Cir. 2006) (affirming dismissal of claim for pension benefits withheld

11

by employer to recoup alleged overpayments). Case law concerning the legal standards for cutback claims under ERISA § 204(g) is uncertain in the Eleventh Circuit. *Compare McDaniel v. Chevron Corp.*, 203 F.3d 1099, 1121 (9th Cir. 2000) ("Section 204(g) of ERISA applies only to formal plan amendments.") *with Cottillion v. United Refining Co.*, 781 F.3d 47, 58 (3d Cir. 2015) ("incorrect interpretation" of plan provision, despite absence of formal plan amendment, constitutes plan amendments for purpose of ERISA § 204(g)). Further, as recognized by this Court, this case involves factual complexities including statements and representations "dat[ing] back to 1994." ECF No. 37 at 5. Finally, Plaintiffs anticipate that Defendants would have opposed class certification. Thus Plaintiffs' likelihood of success in continued litigation is at best uncertain.

## 2.    The Settlement Is Within the Range of Possible Recoveries

In analyzing the range of possible recovery and the point on or below the range at which a settlement is fair, adequate and reasonable, courts have often combined their analysis of those two *Bennett* factors. *Ingram*, 200 F.R.D. at 689 (noting "the first three *Bennett* factors [] are closely related" and analyzing them together); *Lipuma v. Am. Express Co.*, 406 F. Supp. 2d 1298, 1322 (S.D. Fla. 2005) ("These two factors are easily combined."). "The range of potential recovery spans from a finding of non-liability through varying levels of injunctive relief, in addition to any monetary benefits to class members." *Home*

*Depot*, 2016 WL 6902351, at *6. In examining "the range of possible damages that Plaintiffs could recover at trial," the court should "combine this assessment with the likelihood of Plaintiffs' success at trial to determine whether the settlements fall within the range of recoveries that is fair." *In re Motorsports Merch. Antitrust Litig.*, 112 F. Supp. 2d 1329, 1334 (N.D. Ga. 2000). "The Court's role is not to engage in a claim-by-claim, dollar-by-dollar evaluation, but to evaluate the proposed settlement in its totality." *Lipuma v. Am. Express Co.*, 406 F. Supp. 2d 1298, 1323 (S.D. Fla. 2005).

Here, Defendants have agreed to pay $5.5 million plus interest at an agreed-upon rate to resolve the claims of Plaintiffs and the Settlement Class. Agmt. § IV.A. Based on Defendants' data, Plaintiffs' actuary calculated that, without pre-judgment interest, the aggregate total of monetary relief that could be recovered at trial amounted to $9.1 million. Creitz Decl. I ¶ 11. Including Georgia's post-judgment interest rate of 6.5%, for which there is no guarantee as the Court may award a lower rate, Plaintiffs' actuary estimated that the total amount would increase to approximately $12 million. *Id.* Thus, the Settlement Amount represents more than 60% of what members of the Settlement Class whom Plaintiffs contend were not paid the correct amount of benefits under the UCB Plan or had their benefits reduced could have recovered in this litigation before interest. Creitz Decl. II ¶ 14.

Many ERISA class actions settle for far less than 60% of the monetary

amount sought. *E.g., Boyd v. Coventry Health Care Inc.*, 299 F.R.D. 451, 463 (D. Md. 2014) (approving settlement that recovered 3.2% of maximum losses); *Williams v. Rohm & Haas Pension Plan*, 658 F.3d 629, 634 (7th Cir. 2011) (settlement recovered 24.3% of maximum recovery); *Mehling v. New York Life Ins. Co.*, 248 F.R.D. 455, 462 (E.D. Pa. 2008) (20% recovery); *In re WorldCom, Inc. ERISA Litig.*, No. 02-civ- 4816 (DLC), 2004 WL 2338151, at *6 (S.D.N.Y. Oct. 18, 2004) (recovered 7% of maximum recovery). Courts in this circuit have approved settlements in class actions that settled for substantially less than 60%. *E.g., Hillis v. Equifax Consumer Servs., Inc.*, 104-CV-3400-TCB, 2007 WL 1953464, at *4 (N.D. Ga. June 12, 2007) (approving settlement that provided in-kind benefits and injunctive relief but no monetary relief); *In re Dom. Air Transp. Antitrust Litig.*, 148 F.R.D. 297, 325 (N.D. Ga. 1993) (approving settlement equal to approximately 12.7–15.3% of potential untrebled recovery); *Behrens v. Wometco Enters., Inc.*, 118 F.R.D. 534, 542 (S.D. Fla. 1988) (approving settlement of only $.20 a share even though it was "a small fraction of the desired recovery of $3.50"), *aff'd* 899 F.2d 21 (11th Cir. 1990). The monetary consideration provided by the Settlement is well within the range of possible monetary recovery that is fair, adequate, and reasonable.

Courts also take into account the fact that non-monetary relief adds value to a settlement. *Home Depot*, 2016 WL 6902351, at *6 (finding settlement that provided not only monetary relief but also injunctive relief to "address[]

14

future harm" to be within range of possible recoveries and fair); *Ingram*, 200 F.R.D. at 689 (approving settlement where "the programmatic relief" in addition to monetary relief was significant). Here, the Settlement provides significant non-monetary relief to the Class, including injunctive relief to members of the Settlement Class who have received and retained pension benefit payments that included their pre-acquisition service. Agmt. XIII.B. Defendants have agreed not to recoup any alleged overpayments from those members, *id*. XIII.B, and to amend the Plan to recognize the benefits paid to them. *Id*. IV.D. Defendants have also agreed to bear all notice and administration costs, which adds significantly to the net benefits to be received by the Class. *Id*. III.D, IV.G, VII.C. Thus, the non-monetary relief further supports the finding that the second and third *Bennett* factors favor final approval of the Settlement.

### 3. The Complexity, Expense, And Duration of Further Litigation Support Final Approval of the Settlement

In analyzing whether the complexity, expense, and duration of litigation support final approval of a proposed settlement, courts have compared the benefits of immediate recovery to the uncertainties of complex, expensive, and potentially lengthy litigation. *Columbus Drywall & Insulation, Inc. v. Masco Corp.*, 1:04-CV-3066-JEC, 2012 WL 12906499, at *3 (N.D. Ga. Oct. 26, 2012) (comparing benefits of "certain and substantial recovery" provided

by settlement with "no assurance of any recovery, let alone a larger one, if the litigation were to continue against [defendant] through trial and the delay of an appeal"); *Ingram*, 200 F.R.D. at 691 (comparing expenses and duration of further litigation with "the strength of the relief [and] the added benefit of obtaining it now rather than years from now"). The uncertainty as to "whether future recovery at trial could achieve more than the relief made available in the Settlement" favors final approval. *Home Depot*, 2016 WL 6902351, at *6. By contrast, "guaranteed and immediate recovery for the Settlement Class" must be considered versus "the mere possibility of future relief after lengthy and expensive litigation." *Id.*

ERISA class actions, particularly when they involve various legal theories, are complex, and ERISA class actions of this type often take many years. Creitz Decl. II ¶ 13. The expenses incurred by Plaintiffs to date "would only grow were the litigation to proceed" as Plaintiff would have had to conduct a fair amount of formal discovery, seek class certification, and face summary judgment motions, trial, or the prospect of an appeal. *In re Motorsports Merchandise Antitrust Litig.*, 112 F. Supp. 2d at 1338 (approving settlement where further litigation would have involved class certification, summary judgment motions, pre-trial preparation, and trial); *Ingram*, 200 F.R.D. at 690–91 (noting "cases such as this typically take years" and "[e]ach phase of litigation would entail substantial expert costs, attorney time, travel

16

and deposition costs, and other expenses"). Further, as discussed above, the Settlement provides significant monetary and non-monetary relief. *Supra* § II.A.2. The guaranteed and immediate recovery for the Settlement Class by this Settlement outweighs the mere possibility of future relief given the complexity, expense, and duration of likely further litigation.

### 4.    There Is No Opposition to the Settlement

The Court must consider "the substance and amount of opposition to the settlement." *Bennett*, 737 F.2d at 986. "[A] low percentage of objections demonstrates the reasonableness of the Settlement and supports the Settlement's approval." *Home Depot*, 2016 WL 6902351, at *6. The fact that not one class member has objected to the settlement "weighs heavily in favor of settlement approval." *Columbus Drywall*, 2012 WL 12906499, at *4. Here, notice was sent out to the Class on March 13, 2017. ECF No. 69-1 ¶ 4. Class Members had until April 12, 2017 to file objections to the Settlement. No objection has been filed by any Class Member.

### 5.    The Stage of the Proceedings at Which the Settlement was Achieved Weighs in Favor of Final Approval

A court evaluates the stage of the proceedings at which the settlement is achieved "to ensure that Plaintiffs had access to sufficient information to adequately evaluate the merits of the case and weigh the benefits of settlement against further litigation." *Lipuma*, 406 F. Supp. 2d at 1324. Early settlement is favored so long as class counsel has sufficient information to negotiate the

17

settlement. *Id.* (finding "the proposed settlement was achieved early in the litigation, but not so early that Class Counsel did not have sufficient information to negotiate with"); *Ingram*, 200 F.R.D. at 691 (noting that, although settlement in principle was reached merely fourteen months after filing, settlement was not achieved until after "both sides had engaged in extensive discovery"); *Home Depot*, 2016 WL 6902351, at *6 ("The early settlement of this case benefits the Settlement Class and weighs strongly in favor of final approval."). "[T]he lack of [formal discovery] does not compel the conclusion that insufficient discovery was conducted" where class counsel has conducted necessary informal discovery to achieve a settlement. *Cotton*, 559 F.2d at 1332; *Home Depot*, 2016 WL 6902351, at *6 (finding plaintiffs were well-informed about merits of case, "[a]s evidenced by their fact-intensive Consolidated Complaint" filed a year and three months before).

Here, before filing the Complaint, Class Counsel had conducted a thorough pre-suit investigation into the facts, evidence, and controlling law relating to Plaintiffs' claims including by administratively exhausting Plaintiffs' ERISA benefits and fiduciary breach claims. Creitz Decl. II ¶ 11. As evidenced by Complaint, Class Counsel were well informed about their claims. Before mediation, Class Counsel had conducted sufficient informal discovery about the size of the Class and the amount of potential relief. ECF No. 46 at 2; Creitz Decl. I ¶ 11. Based on the data produced by Defendants, Class Counsel

was able to determine the approximate size of the Class and, with the assistance of Plaintiffs' actuary, arrive at estimates of the monetary recovery with and without interest that Plaintiffs could achieve at trial. ECF No. 46 at 2; Creitz Decl. I ¶ 11. Both before and after mediation Class Counsel had engaged an actuary to perform calculations for the Class in order to develop the Plan of Allocation. ECF No. 51 at 2; ECF No. 53 at 1-2; Creitz Decl. I ¶ 12; Creitz Decl. II ¶ 13. Thus, Class Counsel was well informed of the merits of case and had sufficient information to weigh the benefits of settlement against further litigation and determine that the Settlement is fair, adequate, and reasonable.

### B. The Judgment of Class Counsel Should Be Afforded Great Weight

Where experienced counsel represents the settlement class, the court, "absent fraud, collusion, or the like, should be hesitant to substitute its own judgment for that of counsel." *Cotton*, 559 F.2d at 1330; *Ingram*, 200 F.R.D. at 691 (taking into account experienced class counsel's "collective judgment that the benefits of th[e] settlement far outweigh the delay and considerable risk of proceeding to trial"); *Warren v. City of Tampa*, 693 F. Supp. 1051, 1060 (M.D. Fla. 1988) (affording "great weight to the recommendations" of experienced counsel), *aff'd*, 893 F.2d 347 (11th Cir. 1989). Here, Class Counsel have extensive experience in the prosecution of class actions in general and ERISA class actions in particular. ECF No. 68-2 ("Barton Decl.") ¶¶ 3,4; Creitz Decl. II ¶¶ 2-8. Joseph Barton has more than 15 years of experience successfully handling a

19

wide variety of ERISA class actions, including the trials of several ERISA cases such as *Severstal Wheeling, Inc., Ret. Comm. v. WPN Corp.*, 119 F. Supp. 3d 240 (S.D.N.Y. 2015) in which he obtained a $15 million judgment for the fiduciaries of two pension plans, and *Chesemore v. All. Holdings, Inc.*, 09-CV-413-WMC, 2014 WL 8388670 (W.D. Wis. 2014) in which he obtained more than 17 million (plus pre- judgment interest) for class at trial. Barton Decl. ¶¶ 3,4. Joseph Creitz has more than 20 years of experience successfully handling a wide variety of complex ERISA cases, including ERISA class actions such as *Spinedex Physical Therapy USA, Inc. v. United Healthcare of Arizona, Inc.*, 770 F.3d 1282 (9th Cir. 2014) and *Cyr v. Reliance Standard Life Ins. Co.*, No. CV 06-01585DDPRCX, 2008 WL 7095148 (C.D. Cal. January 16, 2008). Creitz Decl. II ¶ 3. Nor is the Settlement a product of collusion. *Infra* § II.C. Thus, Class Counsel's judgment provides further support that the settlement is fair, adequate, and reasonable.

C.    **The Settlement Is Not a Product of Collusion Between the Parties**

In addition to the *Bennett* factors, a court in granting final approval of a class action settlement must find that the settlement "is not a product of collusion between the parties." *Bennett*, 737 F.2d at 986. Courts have found no collusion where the settlement is "the result of extensive arms-length negotiations." *Nelson*, 484 Fed. Appx. at 435; *Ingram*, 200 F.R.D. at 693 ("examining the negotiating process, to determine whether the compromise was the result of arms-length bargaining between the parties"). That the parties

reached the settlement with the assistance of a neutral mediator further supports the absence of collusion. *Nelson*, 484 Fed. Appx. at 435 (affirming final approval where settlement negotiations were "moderated by a court-appointed mediator"); *Home Depot*, 2016 WL 6902351, at *5 (finding no collusion where "[b]oth parties were represented by informed counsel that reached agreement after months of arms- length negotiations before an experienced mediator"); *Ingram*, 200 F.R.D. at 693 (finding no collusion where "the entire mediation was conducted under the auspices of [] a highly experienced mediator").

Here, Plaintiffs participated in the July 26, 2016 mediation after Class Counsel had received and analyzed with the assistance of Plaintiffs' actuary the class data provided by Defendants. *Supra* § I.B. The parties negotiated the principle terms of the Settlement with the assistance of an experienced mediator, former Magistrate Judge Morton Denlow. ECF No. 48 at 1; Creitz Decl. I, ¶ 11. After mediation, the parties spent additional time negotiating and finalizing the terms of the Settlement Agreement as well as the Plan of Allocation and the class notice. ECF Nos. 51 at 2; ECF No. 53 at 1-2; ECF No. 55 at 2; Creitz Decl. I ¶ 12; Creitz Decl. II ¶ 13. The Settlement requires Defendants to pay a substantial amount of $5.5 million plus interest at an agreed-upon rate and cease efforts to recoup any alleged overpayments of benefits to the Settlement Class. The Settlement is not a product of collusion

between the parties but instead the result of hard-fought, arms-length negotiations extending over a period of six months.

Because all of the *Bennett* factors heavily weigh in favor of approval of the Settlement, there is no collusion between the parties, and Class Counsel's judgment should be afforded great weight, final approval of the Settlement should be granted.

## III.   THE PLAN OF ALLOCATION IS FAIR AND RESSONABLE AND MERITS FINAL APPROVAL

A court applies the same standard "to the review of the allocation agreement as it does to the review of the overall settlement between plaintiffs and defendants." *In re Chicken Antitrust Litig. Am. Poultry*, 669 F.2d 228, 238 (5th Cir. 1982). That is, a plan of allocation should be approved where "the formula for the calculation of the payments to class members from the settlement fund provides a fair and reasonable basis upon which to allocate the fund." *Carpenters Health & Welfare Fund v. Coca-Cola Co.*, 587 F. Supp. 2d 1266, 1275 (N.D. Ga. 2008). A class action settlement need not "benefit all class members equally." *Holmes v. Cont'l Can Co.*, 706 F.2d 1144, 1148 (11th Cir. 1983); *Johnson v. Montgomery County Sheriff's Dep't.*, 604 F. Supp. 1346, 1348 (M.D. Ala. 1985) ("That class members receive different amounts of course is not necessarily unfair. Equal shares are as suspect as unequal ones since class members are rarely identical."). Any appearance of unfairness based on higher allocations of

the settlement proceeds to some class members can be rebutted by a showing that such amounts are "rationally based on legitimate considerations." *Holmes*, 706 F.2d at 1148; *Dom. Air Transp.*, 148 F.R.D. at 341 (quoting *Holmes* and approving method of distributing settlement proceeds that was "rationally based on legitimate considerations"). A method of allocating the settlement proceeds is based on legitimate considerations when it takes into account "certain [relevant] factors in each individual case" of the class member. *Johnson*, 604 F. Supp. at 1347, 1349; *In re Sunbeam Secs. Litig.*, 176 F. Supp. 2d 1323, 1328 & n.2 (S.D. Fla. 2001) (finding plan of allocation "that accounts for the differences in individual class members' losses over the class period" to be fair, adequate, and reasonable). In fact, such method "avoids arbitrary allocation of the funds." *Borcea v. Carnival Corp.*, 238 F.R.D. 664, 673–74 (S.D. Fla. 2006) (finding method of allocating settlement proceeds in wage case based on number of months class member worked during class period to be fair and reasonable).

Under the Plan of Allocation, the Net Settlement Amount will be distributed to members of the Settlement Class on the basis of legitimate considerations such as the timeliness and strength of their claims as well as whether they have received benefits that included their pre-acquisition service, and have not returned any alleged overpayments. Based on those considerations, Class Members who are in Group 2, that is, individuals who

23

had previously received payment from the Plan reflecting their pre-acquisition service credit and did not return the alleged overpayment will not receive a distribution from the Net Settlement Amount (although the injunctive relief provided under the Settlement prohibiting Defendants from seeking to recoup any alleged overpayment will apply to them). Plan of Allocation ¶ 3(b). The Group 2 Class Members will not receive a monetary distribution from the settlement amount because they have already received pension benefits that included the years they worked for Northampton and Whitby and have not returned any of those paid benefits to UCB. *Id*. ¶ 2(b), 3(b). The amounts to be distributed on a pro rata basis to Class Members who are not in Group 2 will depend on whether they are in Group 1 or 3. Those in Group 1 will be assigned a pro rata percentage based on 100% of their pre-acquisition service while those in Group 3 will be assigned a pro rata percentage based on 50% of their pre-acquisition. *Id*. ¶ 3(a), (c). This proposed distribution is equitable and avoids arbitrary distribution of the Net Settlement Amount because the Group 1 Class Members had previously received pension statements that explicitly stated that pre-acquisition service credit would be included to calculate their pension benefits and then received a letter in 2011 or 2012 modifying their benefits. Class members in Group 1 likely have stronger claims on the merits and do not face the same statute of limitations defenses as those in Group 3. The reduced pro rata percentage for those in Group 3, which is based on 50% instead of

24

100% of their pre-acquisition service, takes into account these considerations about the strength of their claims as compared to the claims of those in Group 1. For these reasons, the method of distribution as set forth in the Plan of Allocation is based on relevant and legitimate considerations, and the Plan of Allocation is fair and reasonable and merits final approval.

## IV.    CONCLUSION

For the reasons stated above, Plaintiffs' motion for final approval of the Settlement and the Plan of Allocation should be granted.

Date: May 4, 2017                                  Respectfully submitted,

                                           /s/  Stephen Anderson
                                          Stephen Anderson
                                          Georgia Bar No. 018325
                                          ANDERSON DAILEY LLP
                                          2002 Summit Blvd.
                                             Suite 1250
                                          Atlanta, GA 30319 Tel:
                                          404/442-1800       Fax:
                                          404/442-1820
                                          Anderson@andersondailey.com

                                          Joseph A. Creitz
                                          CREITZ & SEREBIN LLP
                                          250 Montgomery St.
                                             Suite 1410
                                          San Francisco, CA 94104 Tel:
                                          (415) 446-3090
                                          Joseph.creitz@gmail.com

R. Joseph Barton
BLOCK & LEVITON LLP
1735 20th St NW,
Washington DC 20009
Tel: (202) 734-7046
Fax: (617) 507-6020
jbarton@blockesq.com

Attorneys for Plaintiffs & the Class

## LOCAL RULE 7.1(D) CERTIFICATION

The undersigned counsel certifies that the foregoing document has been prepared with one of the font and point selections approved by the Court in LR 5.1(B).

_____/s/ Stephen Anderson_____

Stephen Anderson

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that I have on this day caused to be filed electronically via

CM/ECF a true copy of the foregoing in the United States District Court for the

Northern District of Georgia, with notice of same being electronically served by

the CM/ECF system, addressed to the following:


Michael S. French
Georgia Bar No. 276680
WARGO & FRENCH LLP
999 Peachtree Street NE, 26th Floor
Atlanta, GA 30309

Anne E. Rea
Chris K. Meyer
SIDLEY AUSTIN LLP
One South Dearborn Street
Chicago, IL 60603

*Counsel for Defendants*


This 4th day of May, 2017.


/s/ Stephen Anderson
Stephen Anderson

1